IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

THE ESTATE OF JOSEPH LOPEZ,
By Administrator Joe Lopez,

        Plaintiff,

v.

Greensboro Police Department
Officer MATTHEW HAMILTON
and the CITY OF GREENSBORO,

        Defendants.

Civil Action No. 1:22-CV-421

## MEMORANDUM IN SUPPORT OF DEFENDANT MATTHEW HAMILTON'S CONTINGENT MOTION TO STAY PROCEEDINGS

### Introduction

On the evening of November 19, 2021, Greensboro Police Department Officer Matthew Hamilton ("Officer" or "Defendant" Hamilton) fired *one bullet*, which killed Joseph Lopez and resulted in *two court cases—one criminal and one civil.* If Defendant Hamilton is forced to proceed with both cases simultaneously, he will be forced into a dilemma where he either must waive his Fifth Amendment protection in the criminal case or have his silence used against him in this case. That dilemma is contrary to the basic sense of fairness that we strive to meet in our justice system. Fortunately, this Court has the inherent power to ameliorate that dilemma through its grant of a stay. Granting a stay would preserve Defendant Hamilton's ability to exercise his constitutional right to remain silent. However, it would lead (at most) to a delay of the captioned matter, only a mere inconvenience to Plaintiff. Further, a delay would likely promote judicial efficiency

because it could streamline discovery, ultimately, and reduce the issues that must be determined in this case by the Court. Accordingly, a reasonable stay during the pendency of Defendant Hamilton's criminal action should be granted.

## Statement of Facts

1. Plaintiff filed his Complaint (Dkt 1) on June 6, 2022. The Complaint is brought on behalf of the Estate of Joe Lopez (the "decedent") (Complaint ¶ 7). The Complaint alleges that the decedent was fatally shot by Defendant Hamilton on the night of November 21, 2022 while Defendant Hamilton was "acting under color of state law and in the course and scope of his employment" as an officer of the Greensboro Police Department (Complaint ¶ 8). The Complaint alleges that such deadly force was excessive and wrongful.

2. Also on June 6, 2022, a grand jury sitting in Guilford County, North Carolina, entered a true bill of indictment against Defendant Hamilton (the "indictment," Guilford County File No. 22CRS028218) for the alleged manslaughter of the decedent. The indictment concerns the same alleged events as in the Complaint; specifically, it alleges that Defendant Hamilton did "unlawfully, willfully and feloniously kill and slay Joseph Thomas Lee Lopez." A copy of the indictment is attached as Exhibit A.

3. Defendant City of Greensboro (the "City") timely answered Plaintiff's Complaint on July 29, 2022. (Dkt. 14). As part of its answer, the City alleged, in part, the affirmative defense of sovereign and/or governmental immunity. (Dkt. 14, p 9).

4. Defendant Hamilton timely answered the Complaint on August 18, 2022 (Defendant Hamilton's "Answer," Dkt 16). As part of his Answer, Defendant Hamilton

2

asserted the affirmative defenses of qualified immunity (to Plaintiff's federal law claim) and public official immunity (to Plaintiff's state law claim). (Dkt. 16, Second Affirmative Defense).

5. Plaintiff's Complaint did not assert the clearly established right that Defendant Hamilton allegedly violated, nor did it identify any binding precedent allegedly clearly establishing such right.

6. On September 10, 2022, Defendant Hamilton moved for judgment on the pleadings on the basis of his qualified immunity and public official immunity affirmative defenses. (Dkt. 20). That motion remains pending.

**Argument**

Every Court has the inherent power to stay matters on its own docket with a view to avoiding duplicative litigation, inconsistent results, and a waste of time and effort by itself, the litigants, and counsel. *See, e.g., Colorado River Water Cons. Dist. v. U.S.*, 424 U.S. 800, 817 (1976); *Amer. Life Ins. Co. v. Stewart*, 300 U.S. 203, 215 (1937); *International Nickel Co. v. Barry*, 204 F.2d 583, 586 (4th Cir. 1953) ("the power to stay proceedings is incidental to the power inherent in every court to control the disposition of causes on its docket with economy of time and effort for itself, for counsel, and litigants"). Indeed, it is well recognized that:

> A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceeding are necessarily controlling of the action before the court.

3

*Goldstein v. Time Warner New York City Cable Group*, 3 F.Supp.2d 423, 437-38 (S.D.N.Y.1998) (quoting *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 864 (9th Cir.), *cert. denied*, 444 U.S. 827 (1979)).

The question of whether to stay litigation proceedings rests largely within the sound discretion of the trial court. *See, e.g., American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 97 (4th Cir. 1996). Accordingly, the determination by a trial court in granting or denying a motion to stay calls for an exercise of judgment to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket. *See, e.g.*, *Landis v. North American Co.*, 299 U.S. at 254-55.

The Constitution does not prohibit concurrent civil and criminal proceedings. Nevertheless, a court may use its discretion to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions "when the interests of justice seem to require such action." *United States v. Kordel*, 397 U.S. 1, 12, n.27 (1970).

"[T]he strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." *Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375–76 (D.C. Cir. 1980). That is because if the noncriminal proceeding is not deferred, it "might undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case." *Id.*

4

Neither the U.S. Supreme Court nor the Fourth Circuit have dictated what factors a trial court may—or must—consider when exercising its discretion in this area. However, most courts seem to have coalesced around different iterations of the same relevant factors, to wit: (1) whether the two actions involved the same subject matter, (2) the posture of the criminal proceeding and the court's interest, (3) whether the government is a party to both actions, (4) the burden that any particular aspect of the proceedings may impose on the defendants, (5) the plaintiff's interests and possible prejudice to the plaintiff, and (6) the public interests at stake. *See, e.g., Jane Doe v. City of Chicago*, 360 F.Supp.2d 880, 881 (N.D. Ill. 2005); *see also, e.g., Harbour Town Yacht Club Boat Slip Owners Ass'n v. Safe Berth Mgmt., Inc.*, 411 F. Supp. 2d 641, 643–45 (D.S.C. 2005); *Ashworth v. Albers Med., Inc.*, 229 F.R.D. 527, 530–33 (S.D.W. Va. 2005).

The cases in which a motion to stay has been denied have generally shown weaknesses of the first two factors, i.e., relatedness of the two proceedings and/or procedural posture of the criminal matter. *See, e.g., Harbour Town,* 411 F. Supp. 2d at 643–45 (denying stay where the scope of the civil proceeding contract dispute did not extend to encompass the alleged violations of the criminal matter); *see also Cruz v. County of DuPage*, No. 96 C 7170, 1997 WL 370194, *3 (N.D. Ill. June 27, 1997) ("In the cases in which a motion to stay has been denied, there has usually only been a *threat* of indictment of the civil litigants."). In this case, both the civil and criminal matters deal with the *identical issue* (i.e., whether Defendant Hamilton used excessive force when he fatally shot the decedent) and the government is a party to both actions. All other factors also support a stay.

5

### A. Relatedness

"[T]he requirement of the existence of a nexus between the parallel proceedings sufficient to show that such proceedings are related and involve substantially similar issues is the threshold factor for a stay." Ashworth v. Albers Med., Inc., 229 F.R.D. 527, 531 (S.D.W. Va. 2005). Without this nexus, "the myriad of tangible concerns in favor of a stay, including the protection of a defendant's Fifth Amendment interest" dissipates. *Id.*

In this case, both the civil and criminal actions arise from the exact same—singular—event, to wit, they both arise from Defendant Hamilton's fatal shooting of Joseph Lopez while acting as a Greensboro police officer. Further, both cases have as the gravamen of their allegations the exact same alleged wrongful conduct by Defendant Hamilton. Specifically, the Plaintiff (in this case) and the State (in the criminal case) must prove, *inter alia*, that Defendant Hamilton used force beyond that to which he was lawfully authorized in apprehending the decedent (i.e., excessive force). It is not conceivable that two actions could be more related.

### B. Procedural Posture/Court's Interest

After relatedness, the second biggest factor generally seems to be the procedural posture of the criminal proceedings, specifically, whether charges have been filed or are merely possible/likely. *See, e.g.*, *Cruz v. County of DuPage*, No. 96 C 7170, 1997 WL 370194, *3 (N.D. Ill. June 27, 1997) (and cases cited therein) ("In the cases in which a motion to stay has been denied, there has usually only been a *threat* of indictment of the civil litigants."). Here, the conflict between the civil and criminal actions is real and

unavoidable, because Defendant Hamilton has, in fact, been indicted. (*See* Indictment, Exhibit A to Motion).

Furthermore, this is not a case where the criminal charges are lagging behind the civil action. To the contrary, both this action and the criminal charges were filed *the very same day* (i.e., June 6, 2022). Accordingly, as has been noted by other courts, "the requested stay will not impact the court's docket in the short term. However, 'the resolution of the criminal case may later streamline discovery in the civil case.'" *Ashworth*, 229 F.R.D. at 532 (*quoting Bridgeport Harbour Place I, LLC v. Ganim*, 269 F.Supp.2d 6, 9 (D.Conn.2002)).

### C. The Government is a Party to the Action

The criminal action has been brought by, and in the name of, the State of North Carolina. Nominally, the governmental defendant in this case is the City of Greensboro. However, in North Carolina, cities and other local subdivisions are "mere instrumentalities of the State for the more convenient administration of local government." *Town of Boone v. State*, 369 N.C. 126, 131, 794 S.E.2d 710, 714 (2016) (quotations/citations omitted). Accordingly, the possibility exists in the criminal case that the State could use this action to gain discovery that it could not obtain through the criminal discovery process. Further, because of Defendant Hamilton's right to invoke the Fifth Amendment, the governmental entity in this action may not be able to obtain discovery from Defendant Hamilton that it needs to mount a defense.

7

### D. Defendant Hamilton's Interest

The potential prejudice to Defendant Hamilton in having to defend himself against criminal charges at the same time as these civil allegations far outweighs any arguable interest Plaintiff has in seeking delay-free resolution of his claims. Our system of justice—both civil and criminal—has at its heart the fundamental concept of procedural fairness. However, while they share the general concept of fairness, it can mean exactly opposite things in civil and criminal cases. In civil cases, every litigant has the right to be heard in his defense. However, in criminal cases, the Fifth Amendment provides that no person can be compelled to testify concerning charges against him. This fervent belief in a right against self-incrimination was brought to this country by the Puritans and was a motivating factor for them to seek refuge in this land. *See United States v. Gecas*, 120 F.3d 1419, 1449 (11th Cir. 1997) (for an in depth and highly interesting examination on the many-centuries origin of the right). It is, then, truly part of our American DNA.

Here, as in similar cases where court's have routinely granted stays, "[t]he noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination." *Dresser*, 628 F.2d at 1375–76. This is because if Defendant testifies in this case, he may be deemed to have waived his Fifth Amendment privilege. Further, any statements or admissions made by Defendant in this case could be used against him in his criminal cases. *See United States v. Kordel*, 397 U.S. 1, 7 (1970) (criminal defendant forfeited his right to assert Fifth Amendment privilege with regard to answers he gave to interrogatories in a prior civil proceeding).

8

In order to avoid waiving his privilege in the criminal proceedings, Defendant would be compelled to assert his Fifth Amendment privilege in this case. However, this creates a harsh dilemma that is inconsistent with the general fairness of civil litigation. That is because, "while an assertion of the privilege cannot be used to the detriment of a criminal defendant, a district court may constitutionally permit a jury to draw an adverse inference from the refusal to testify on Fifth Amendment grounds by either a witness or party in a civil suit." *U.S. ex rel. DRC, Inc. v. Custer Battles, LLC*, 415 F. Supp. 2d 628, 633 (E.D. Va. 2006) (*citing Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)).

Here, a stay would allow Defendant Hamilton to remain silent in the criminal case—just like any other criminal defendant—and later testify in his own behalf in this case—just like any other civil defendant.

Additionally, the potential prejudice to Defendant Hamilton is not limited to the Fifth Amendment privilege issue. In criminal cases, generally, the government must prove its case against the defendant beyond a reasonable doubt without the benefit of discovery from the defendant. However, here, the government could use civil discovery in this case to obtain information from defendant for use in the criminal action. That would "expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b). *Dresser*, 628 F.2d at 1375–76. Finally, it would unfairly "expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case." *Id.* Clearly, then, Defendant Hamilton's interest in having *two fair trials* strongly militates in favor of a stay.

9

### E. Plaintiff Would Not Be Unduly Prejudiced by a Stay

Presumably, Plaintiff has an interest in a speedy resolution of his claims. However, a reasonable delay of this litigation would not result in actual prejudice to Plaintiff, and could, likely, inure to his benefit.

As used by the courts, "prejudice" means something more than the mere inconvenience of delay or the frustration of a party's desire to get the most expeditious resolution of its claims. Rather, the question is whether the requested action would impair the non-moving party's right to a fair trial. "The ability of a non-moving party to present evidence and the ability to proceed to trial are given the most weight in determining prejudice, and mere inconvenience is insufficient to constitute prejudice to the non-moving party." *Pinpoint IT Servs., LLC v. Atlas IT Export Corp.*, 812 F. Supp. 2d 710, 727 (E.D. Va. 2011) (re setting aside entry of default). Prejudice will also be found where the delay impairs a non-movant's ability to present evidence on a claim or defense, make it more difficult to proceed with trial, or hamper its ability to complete discovery. *See, e.g., Parks v. Disc. Box & Pallet, Inc.*, No. 5:12CV081, 2013 WL 662951, at *8 (W.D. Va. Feb. 22, 2013).

Here, a delay would cause Plaintiff no actual prejudice. The statute of limitations was already met on his claim and would be tolled during any stay. A delay would not cause Plaintiff to lose access to any witnesses or other evidence. To the contrary, allowing the criminal case to proceed first would likely *increase* the evidence available to Plaintiff and facilitate a more efficient trial of the civil matter because, following a stay, Plaintiff would have the benefit of all the testimony and evidence offered in the criminal trial.

10

Further, if the criminal trial resulted in a conviction, that could, possibly, simplify or lessen Plaintiff's evidentiary burden as a result of collateral estoppel.[1]

### F. The Public's Interest Would be Furthered by a Stay

A stay of the civil case will promote three important public interests. First, it will vindicate the public's interest in seeing that the protections afforded by the Fifth Amendment are safeguarded. *See, e.g., Jones v. City of Indianapolis*, 216 F.R.D. 440, 452 (S.D. Ind. 2003) (noting the public's "important interest" in "untainted" criminal prosecutions); *Ex parte Coastal Training Inst.*, 583 So. 2d 979, 981 (Ala. 1991) ("[Courts] must favor the constitutional privilege against self-incrimination over the interest in avoiding the delay of a civil proceeding.").

Second, a stay will promote the public's interest in ensuring that civil disputes, including plaintiff's, are fairly decided on a full factual record. *See*, *Edwards v. Atrium Village*, 127 F.R.D. 494, 499 (N.D. Ill. 1989) (noting the "important public interest in having [an] issue decided on the basis of a full factual record").

Finally, a stay will promote the interest of the public—including those North Carolina citizens who serve in the inherently dangerous positions of law enforcement officers—underlying North Carolina's public official immunity and as set forth by statute

---

[1] Officer Hamilton knows, and fully believes the evidence will establish, that on the evening of November 19, 2021, he used only that force that was appropriate and permissible under the specific circumstances he faced at the moment of the tragic event. *See* N.C.G.S. Section 15A-401(d)(2). He therefore fully expects that he will ultimately prevail and be vindicated in both the civil and criminal actions. Nevertheless, he recognizes that the results of trials are always uncertain.

11

in N.C. Gen. Stat. § 15A-401(d)(2). Under North Carolina law, "a public official is immune from personal liability for mere negligence in the performance of his duties, but he is not shielded from liability if his alleged actions were corrupt or malicious or if he acted outside and beyond the scope of his duties." *Slade v. Vernon*, 110 N.C. App. 422, 428, 429 S.E.2d 744, 747 (1993). G.S. § 15A-401(d)(1)-(2) authorizes the use of deadly force by a law enforcement officer when, inter alia, "it is or appears reasonably necessary ... [t]o defend himself or a third person from what he reasonably believes to be the use of imminent deadly physical force". Here, Officer Hamilton was compelled to use deadly force while apprehending a potentially dangerous suspect who refused to comply with orders to exit a dark, barricaded, position. Despite the stated protections of North Carolina law, Officer Hamilton has now been charged with felony manslaughter *and* sued for civil damages. This situation will cause, and has already caused, significant confusion and concern among the officers of the affected law enforcement agency, and potentially chills such officers' ability to safely and efficiently perform their duties. A stay would allow these two actions to be resolved in a more orderly *and fair* manner.

## V. Conclusion

For the foregoing reasons, if any claims against Defendant Hamilton survive this Court's judgment on the pleadings, litigation of such claims should be stayed until the resolution of Defendant Hamilton's related criminal charges.

12

Case 1:22-cv-00421-LCB-JLW   Document 26   Filed 09/13/22   Page 12 of 15

This the 13th day of September, 2022.

/s/ Amiel J. Rossabi
North Carolina State Bar No. 16984
ROSSABI LAW PLLC
445 Dolley Madison Road, Suite 200
Greensboro, North Carolina 27410
Telephone: (336) 895-4350
Email: arossabi@r2kslaw.com

/s/ Walter K. Burton, Esq.
North Carolina State Bar No. 13969
WALTER K. BURTON, PLLC
Post Office Box 609
Oak Ridge, North Carolina 27310
Telephone: (336) 429-5525
Email: wkb@wburtonlaw.com

*Attorneys for Defendant Matthew Hamilton*

## CERTIFICATE OF WORD COUNT

I certify that the foregoing document complies with the word count limit set forth in L.R. 7.3(d) in that it contains no more than 6,250 words, exclusive of the caption, signature lines, certificate of service, and any cover page or index, according to the word count feature of the word processing software used to prepare such document.

This the 13th day of September, 2022.

/s/ Amiel J. Rossabi
North Carolina State Bar No. 16984
*Attorney for Defendant Matthew Hamilton*
ROSSABI LAW PLLC
445 Dolley Madison Road, Suite 200
Greensboro, North Carolina 27410
Telephone: (336) 895-4350
Email: arossabi@r2kslaw.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was served on all parties to this action by electronically filing the same with the Clerk of Court using the CM/ECF system, which caused notification of such filing to be emailed to the following parties of record:

> Graham Holt, Esq.
> Email: gholtpllc@gmail.com
>
> G. Flint Taylor, Esq.
> Ben H. Elson, Esq.
> Email: flinttaylor@peopleslawoffice.com
> ben@peopleslawoffice.com
>
> Polly Sizemore, Esq.
> Email: polly.sizemore@greensboro-nc.gov
>
> Sonny S. Haynes, Esq.
> Email: Sonny.Haynes@wbd-us.com

This the 13th day of September, 2022.

> /s/ Amiel J. Rossabi
> North Carolina State Bar No. 16984
> *Attorney for Defendant Matthew Hamilton*
> ROSSABI LAW PLLC
> 445 Dolley Madison Road, Suite 200
> Greensboro, North Carolina 27410
> Telephone: (336) 895-4350
> Email: arossabi@r2kslaw.com