IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| The ESTATE OF JOSEPH LOPEZ, | ) | |
| by Administrator Joe Lopez, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:22-CV-421 |
| | ) | |
| v. | ) | |
| | ) | |
| Greensboro Police Department Officer | ) | |
| MATTHEW HAMILTON, and the | ) | |
| CITY OF GREENSBORO, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
HAMILTON'S MOTION TO STAY THE PROCEEDINGS**

Plaintiff Estate of Joseph Lopez by its undersigned attorneys, responds in opposition to

Defendant Hamilton's motion to stay the proceedings (Dkt. 25), and in support states as follows:

**INTRODUCTION**

Plaintiff alleges that on November 19, 2021, former Greensboro police officer, Defendant

Matthew Hamilton, used unnecessary deadly force when he shot and killed Joseph Lopez, who

was unarmed and did not pose a threat to Hamilton or anyone else. *See* Dkt. 1. Plaintiff further

alleges that the City of Greensboro is responsible for Joseph Lopez's death based on its deficient

policies, practices and customs, which were the moving force behind Defendant Hamilton's

unnecessary use of deadly force. *Id.*

Hamilton, who was indicted by a Guilford County Grand Jury in June of 2022 for

manslaughter in the death of Joseph Lopez, and whose criminal prosecution by the Guilford

County District Attorney's Office is in its beginning stages, fully answered Plaintiff's complaint

in August, refused to participate in the Court ordered Rule 26(f) conference, then filed a

frivolous motion for judgment on the pleadings, and has now moved for an indefinite stay of all

proceedings in this civil case until his criminal prosecution is resolved based on the possibility that he could assert his Fifth Amendment rights in this lawsuit despite making the strategic decision not to do so in his answer to the complaint.

The City, for its part, has not joined Hamilton's motion for a stay, asserting instead in its Rule 26(f) report that it "defers to the Court regarding the propriety of a stay pending the resolution of the criminal matter." *See* Dkt. 22. The City also asserted in its Rule 26(f) report, without any argument or citation to authority, that Hamilton's motion for judgment on the pleadings should be resolved before discovery commences, but has not filed a motion seeking this relief. *See id.*

As explained more fully below, Hamilton has engaged in procedural gamesmanship and dilatory tactics regarding the Fifth Amendment which should result in waiver of the privilege, and, as a consequence, the complete denial of his motion to stay. Waiver aside, an indefinite stay of all proceedings pending resolution of Hamilton's criminal prosecution would be improper. The Court should not permit this case to linger on its docket as a placeholder for what could be as long as three years, when Rule 26(a)(1) disclosures and certain discovery that is unaffected by Hamilton's criminal case can proceed now. Specifically, alternatively, and at the very least, all written and oral discovery, including third-party discovery, can commence regarding Plaintiff's *Monell* claims against the City and Plaintiff's claim for damages; and extensive oral and written discovery can commence against Defendant Hamilton without impeding his not yet asserted Fifth Amendment rights. Proceeding in this fashion will give the parties a significant "leg up" on discovery once Hamilton's criminal prosecution ends, and will thus provide for a more speedy and expeditious resolution of this case pursuant to Fed. R. Civ. P. 1.

2

## PROCEDURAL BACKGROUND

On November 19, 2021, Joseph Lopez was shot and killed by Defendant Hamilton. Shortly thereafter the North Carolina State Bureau of Investigation (SBI) began its criminal investigation into the incident. Hamilton's lawyer in this civil case, Amiel Rossabi, was involved in his capacity as counsel for the Greensboro Police Officers Association in representing Hamilton and other officers on the night of the incident. While the full scope of Mr. Rossabi's apparent conflict of interest is not yet known, it is known that Rossabi not only represented Hamilton, but also all of the other officers on the scene of the shooting when they gave statements to the SBI, a conflict that Hamilton and other officers have waived in the criminal proceedings. *See* Conflict of Interest Motion and Waivers attached as Exhibit A.

On June 6, 2022, Joseph's father, Joe Lopez, as the administrator of Joseph's estate, filed this lawsuit. *See* Compl., Dkt. 1. Plaintiff's complaint alleges that Greensboro police officers, including Hamilton, responded to a residence in Greensboro, where it had been allegedly reported that Joseph had previously been trying to enter. *Id.* at ¶10. Hamilton and other GPD officers located Joseph inside a small room that was located at the rear of a two car garage at the residence. *Id.* at ¶11. Hamilton, who was a police dog handler, approached and opened the door of the room with his police dog on a leash. *Id.* at ¶12. As he stood next to the open door, Hamilton said, "Greensboro police, if you're in there, make yourself known." *Id.* at ¶13. Joseph replied, "Yes, I'm here." *Id.* at ¶14. Hamilton then said, "Come out with your hands up or I'll send my dog in there and he'll bite you." *Id.* at ¶15. Joseph responded in a non-threatening manner that he would come out when it was "safe" to do so, and shortly thereafter, without justification, Hamilton released his police dog into the room where Joseph was sitting. *Id.* at ¶16-17. Seconds later, Hamilton walked through the door, pulled his handgun from his holster,

stepped into the room, and, without saying anything, shot Joseph once square in the face with his service handgun, despite the fact that Joseph was approximately 15 feet away from Hamilton, made no verbal or physical threats to Hamilton or others, and presented no immediate danger to Hamilton or others. *Id.* at ¶17, 19, 23. Joseph died at the scene as a result of the hollow-point gunshot wound. *Id.* at ¶20. Immediately after fatally shooting Joseph, Hamilton exclaimed, "Oh shit . . . fuck." *Id.* at ¶21. Additionally, Plaintiff joined the City under *Monell* for several related *de facto* policy, practice and custom claims, including failures to properly train, discipline and supervise as well as a pattern of discriminatory police use of excessive and deadly force. *Id.* at ¶30-32, 39-41.

On June 6, 2022, the Guilford County District Attorney's Office announced that Hamilton had been indicted by a Guilford County Grand Jury on a charge of manslaughter in the death of Joseph Lopez. Mr. Rossabi, who is representing Hamilton in this civil case,[1] and is also representing Hamilton in his criminal case, issued a press release which summarized his client's false version of events in response. *See* Press Release attached as Exhibit B.

On July 29, 2022, Defendant City answered the complaint. Dkt. 14. On August 18, 2022, Defendant Hamilton answered the complaint. Dkt. 16. Significantly, despite being under indictment, Hamilton chose to fully answer the allegations in the complaint, specifically denying, with extraneous surplusage, most of the allegations of wrongdoing alleged against him, asserting seven affirmative defenses, and incorporating his Body Worn Camera footage, rather than to invoke the Fifth Amendment, or seek a stay prior to answering the complaint. *Id.*

---

[1] It is unclear whether the City is paying for Mr. Rossabi's representation—Public Records responses from the City reflect that he has submitted several bills, but has no contract with the City and has not as of yet been paid.

4

On August 28, 2022, the parties engaged in a Rule 26(f) conference. During the conference, Mr. Rossabi refused to confer about a discovery plan, which he claimed was "obliterated" based on the motion to stay he intended to file. The parties subsequently submitted individual Rule 26(f) reports in mid-September. Dkt. 18, 19, 22. Hamilton's Rule 26(f) report, which repeatedly states that "discovery is premature due to impending filing of the Motions," violates LR 26.1(a).[2]

On September 10, 2022, Hamilton filed a motion for judgment on the pleadings (Dkt. 20), and on September 13, 2022, he filed the instant motion to stay the proceedings (Dkt. 25). He attached selected Body Worn Camera videos, including that of Defendant Hamilton's and several other officers on the scene, to the motion for judgment on the pleadings, and made arguments which he claimed were based on Hamilton's video. *See* Dkt 21, pp. 14-17.

On September 19, 2022, Hamilton filed a consent motion to continue the Initial Pretrial Conference Hearing until after the motion to stay was fully briefed and ruled on, (Dkt. 27), which this Court granted, continuing the Initial Pretrial Conference Hearing to November 15, 2022. *See* Dkt. 29.

## LEGAL STANDARD

When analyzing whether to grant a stay, the Court must weigh the competing interests of the parties. *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). "The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir.

---

[2] LR 26.1(a) states in pertinent part: "When one or more of the parties advocates for delay in discovery or limitation of discovery, the report shall also set out the party's position on the scope and length of discovery needed absent or following any delay or limitation. Whether or not any party believes that the timing, scope, and/or sequence of discovery should be affected by a pending motion, the parties shall address the appropriate track for the case at whatever point discovery may proceed in the matter."

1983). "Because of the frequency with which civil and regulatory laws overlap with criminal laws, American jurisprudence contemplates the possibility of simultaneous or virtually simultaneous parallel proceedings and the Constitution does not mandate the stay of civil proceedings in the face of criminal proceedings." *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 379 (4th Cir. 2013).

Although the Fourth Circuit has not adopted an explicit set of factors to consider when determining whether to implement a stay, courts within the circuit have applied a non-exclusive five-factor test adopted by a variety of courts across the country:

> (1) the interest of the plaintiffs in proceeding expeditiously with [the] litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay, (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

*See, e.g., Ashworth v. Albers Med., Inc.*, 229 F.R.D. 527, 530 (S.D.W. Va. 2005). "Additional considerations have been . . . bad faith, the status of the criminal proceedings, etc." *Suntrust Mortg., Inc. v. Busby*, 2009 U.S. Dist. LEXIS 122251, at *21 (W.D.N.C. Dec. 7, 2009).

While it is true that based on a criminal defendant's Fifth Amendment rights, "[f]ederal courts have held that a stay is most appropriate in situations where a party is under indictment for a serious offense," *Avalonbay v. San Jose Water Conservation Corp.*, 2007 U.S. Dist. LEXIS 63773, at *9 (E.D. Va. Aug. 27, 2007), "[d]espite these factors, such a stay of a civil case to permit conclusion of a related criminal prosecution has been characterized as an extraordinary remedy." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 98 (2d Cir. 2012) (internal quotations omitted). Further, the Constitution does not require such a stay, and "[t]he existence of a civil defendant's Fifth Amendment right arising out of a related criminal proceeding thus

6

does not strip the court in the civil action of its broad discretion to manage its docket." *Id.* at 98-99.

## ARGUMENT

### I.    Hamilton's Procedural Gamesmanship and Dilatory Tactics Regarding the Fifth Amendment Weigh Heavily Against a Stay

Hamilton seeks to have the best of all worlds: to publicly assert his client's version of events to the media, to be able to answer the complaint with denials and affirmative defenses, to bring a motion for judgment on the pleadings which relies in part on his self-serving interpretation of his BWC video, and, on information and belief, to give a false exculpatory statement to the State Bureau of Investigation, while avoiding participation in a Rule 26(f) conference, avoiding having to respond to discovery, and avoiding the assertion of the Fifth Amendment. If Hamilton was genuinely concerned about protecting his Fifth Amendment rights, he would have and should have either moved for a stay prior to answering the complaint or asserted the Fifth Amendment in his answer to the complaint, but instead he fully answered the complaint, including asserting affirmative defenses, so that he could file a motion for judgment on the pleadings. These maneuvers demonstrate that Hamilton has intentionally delayed asserting his privilege for strategic advantage, resulting in prejudice to Plaintiff, which should, at the very least, weigh heavily against granting his motion to stay all proceedings.

Moreover, by answering the complaint and asserting affirmative defenses, Hamilton has waived the Fifth Amendment as it relates to all of the factual allegations he asserted in his answer, all of his denials of Plaintiff's factual allegations, and his Affirmative Defenses 3-7. The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." An individual may assert the privilege against self-incrimination "in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory . . .

7

which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 444-45 (1972). This privilege applies at trial and during the discovery process. *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). Unlike its application in criminal cases, reliance on the Fifth Amendment in civil cases may give rise to an adverse inference against the party claiming its benefits. *Id.* at 318. The Fifth Amendment privilege is not self-executing. *Roberts v. United States*, 445 U.S. 552, 559 (1980). The privilege can be waived by failing to invoke it in a timely manner and by disclosure of incriminating evidence. *Rogers v. United States*, 340 U.S. 367, 373 (1951). The privilege not only extends "to answers that would in themselves support a conviction … but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant…." *Hoffman v. United States*, 341 U.S. 479, 486 (1951)). When a party voluntarily reveals incriminating facts, that party cannot invoke the privilege to avoid disclosure of the details. *Rogers*, 340 U.S. at 373.

Here, Defendant Hamilton's answer to the complaint includes evidentiary admissions and false exculpatory denials pursuant to Fed. R. Evid. 801(d)(2). For example, Hamilton admits to being on the scene; that Joseph responded to some of his commands; that he released his dog into the shed where Joseph was located; and that he shot Joseph in the face. *See* Dkt. 16. By incorporating his video into his answer, he also admits that Joseph said he was coming out when he shot him, and that Hamilton made the inculpatory exclamation "oh shit, oh fuck" directly after he shot Joseph. Further, by incorporating other officers' BWC footage into his Motion for Judgment on the Pleadings, he further admits by incorporation that Joseph was unarmed, that Joseph's cell phone was not in his hand, but rather in his pocket when he was shot, and that

Hamilton's statement in his answer that Joseph pointed a dark object at him was a false exculpatory statement.

The fact that Hamilton intentionally delayed asserting the Fifth Amendment for tactical gain and revealed incriminating facts in his answer should result in waiver. *Cf.*, *Rogers*, 340 U.S. at 373; *Day v. Boston Edison Company*, 150 F.R.D. 16, 22-23 (D. Mass. 1993); *United Auto. Ins. v. Veluchamy*, 2010 U.S. Dist. LEXIS 19432, at *2 (N.D. Ill. Mar. 4, 2010); *In re Gorsoan Ltd.*, 2020 U.S. Dist. LEXIS 104025, at *16-22 (S.D.N.Y. June 15, 2020).

## II. A Complete Stay As To Defendant Hamilton Is Improper

If this Court finds that Hamilton's tactics have resulted in waiver of his Fifth Amendment rights, then there is no reason why discovery should not promptly commence in full. If, on the other hand, the Court does not find waiver, Hamilton's motion for a complete stay of the proceedings should still be denied, and instead the Court should issue a targeted limited stay of discovery only as it relates to testimony or interrogatory answers to be provided by Hamilton that would implicate his Fifth Amendment rights.

### A. Potential prejudice to Plaintiff

Plaintiff is undoubtedly prejudiced by the potentially indefinite postponement of these civil proceedings. Plaintiff has a significant interest in obtaining resolution of his claims and compensation. Moreover, the longer this action is delayed, the higher risk that important evidence will be misplaced or destroyed, that witnesses will become unavailable, and that their memories will fade. "Civil plaintiffs who claim to be the victims of criminal activity do not deserve slower justice than other plaintiffs." *Reeves v. Town of Cottageville*, 2013 U.S. Dist. LEXIS 52675, at *6 (D.S.C. Apr. 12, 2013) (citing *Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 575 (S.D.N.Y. 2001) ("[I]t would be perverse if plaintiffs who claim to be

Case 1:22-cv-00421-LCB-JLW   Document 32   Filed 10/04/22   Page 9 of 17

the victims of criminal activity were to receive slower justice than other plaintiffs because the behavior they allege is sufficiently egregious to have attracted the attention of the criminal authorities."). The prejudice to Plaintiff is particularly high here where the pending criminal proceeding is at a very early stage, there is no trial date set, and there is a high likelihood of significant delay before the charge reaches final disposition. Indeed, it is well documented that it can take years before a criminal case goes to trial in Guilford County. And the backlog of criminal cases has only been exacerbated by the pandemic. In July of 2021, Guilford County District Attorney Avery Crump said in a television interview that a pre-pandemic case backlog of 35,000 cases had swelled, over the course of the pandemic, to 58,000 cases. In the same interview, Crump went on to say that she thought the county might never get back up to where things were before the pandemic, before adding, "we have individuals, they've been waiting for trial since 2018, 2019. New cases are now going to have to wait years because you still have to get through the old cases."[3] By the District Attorney's own assessment of the backlog of criminal cases in Guilford County, it is reasonable to infer that it might be years before Hamilton's criminal case goes to trial. This factor favors the denial of a complete stay.

### B. The burden on Defendant Hamilton

Although it is true that the present case and the pending criminal prosecution involve some of the same subject matter, under Plaintiff's alternative proposal the dangers Hamilton faces if his request for a complete stay is denied are remote, if not non-existent, because Plaintiff will not seek oral discovery from Hamilton regarding his actions during the night of the shooting

---

[3] *See* DA Avery Crump WFMY News 2 Interview, https://www.youtube.com/watch?v=50uy7r-2u7s.

until his criminal case is resolved.[4] In addition, to the extent Hamilton believes Plaintiff has issued discovery that implicates his Fifth Amendment rights, he may either move for a protective order or assert his Fifth Amendment rights, as applicable, to any discovery requests in which those rights are implicated. *See Baxter*, 425 U.S. at 316 ("[T]he Fifth Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings."). In weighing this factor, the Court also must take into account Hamilton's strategic decision to fully answer the complaint as opposed to invoke the Fifth Amendment or seek a stay at that time because it served his interests in allowing him to file a motion for judgment on the pleadings, but now, when it comes time to participate in discovery, he uses the *possibility* that he will assert the Fifth Amendment to seek a stay.

## C. Convenience of the Court

The Court certainly has an interest in managing its case load efficiently, just as the parties have an interest in having this case litigated in an efficient manner. If Fifth Amendment concerns arise during the course of discovery in this civil case, the Court will be able to handle those concerns when they present themselves. On the other hand, if Hamilton's motion is granted, this case will sit inert on the Court's docket for years. This factor also weighs against granting a stay.

## D. Interest of non-parties

No non-party interests have been identified, so this factor does not affect the evaluation of the present motion.

---

[4] Of course, Plaintiff would still be entitled to any statements Hamilton may have made about the events, information about his police history, training and discipline, and other relevant documentary and video evidence.

### E. The public interest

The public has an interest in the prompt disposition of civil litigation, an interest that has been enacted into positive law via the Civil Justice Reform Act of 1990. *See* 28 U.S.C. §§ 471-82. A stay quite obviously will impair that interest. With regard to this case in particular, in the wake of highly publicized police murders of George Floyd and others, and the world-wide protests that followed, and the local public concern over police violence triggered by the hogtying of Marcus Deon Smith, the public has a significant interest in the families of police murder victims receiving a prompt resolution of their cases. Indeed, 42 U.S.C. § 1983 was intended to encourage private parties to police those who are charged with policing us all. *See City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986) ("Congress expressly recognized that a plaintiff who obtains relief in a civil rights lawsuit does so not for himself alone but also as a private attorney general, vindicating a policy that Congress considered of the highest importance.... If the citizen does not have the resources, his day in court is denied him; the congressional policy which he seeks to assert and vindicate goes unvindicated; and the entire Nation, not just the individual citizen, suffers." (internal quotations omitted)).

Hamilton asserts that a stay will promote the public interest of Greensboro police officers, who, he claims are confused and concerned about their fellow officer having been indicted and sued, and that a stay will promote the public's interest "in seeing that the protections afforded by the Fifth Amendment are safeguarded," and "in ensuring that civil disputes, including plaintiff's, are fairly decided on a full factual record." Dkt. 26 at 11. None of these arguments have merit. *First*, the "public interest" obviously does not include municipal employees such as Greensboro police officers; rather, it refers to the interest of the citizens for

whom the police serve, and, unfortunately, all too often brutalize. The interest of Greensboro police officers, many of whom Mr. Rossabi represents, in having their brother officer exonerated does not weigh in favor of granting a stay. *Second*, to the extent the public has an interest in Hamilton's Fifth Amendment rights being safeguarded, which stretches the application of this element way too far, under Plaintiff's alternative proposal, Hamilton's Fifth Amendment rights *are* safeguarded. *Third*, this case will ultimately be decided on a full factual record, and allowing for discovery that does not interfere with Hamilton's tardy invocation of the specter of the Fifth Amendment to proceed now will not change that fact.

### F. Whether the government is a party in both cases

Another factor that can be considered is whether the government is a party in both cases. Courts have found that if the governmental entity that initiated the parallel criminal prosecution or investigation is a party in the civil case, there is a concern that it may use the civil discovery process to circumvent limitations on discovery in criminal proceedings, but, despite Hamilton's confusing assertion to the contrary, that is not an issue in this case, because Guilford County, the criminal prosecuting agency, is not a party to the civil litigation. This weighs against a stay.

• • •

In sum, under these circumstances, a complete stay of this matter—either one of unlimited or limited duration—is unwarranted. Instead, a targeted, partial stay of discovery, as it relates to information to be provided by Hamilton only that would implicate his Fifth Amendment rights, can appropriately account for the parties' various interests, as well as the need to allow this matter to progress toward trial. In his Rule 26(f) Report, Plaintiff proposed 15 depositions for each side. Of those contemplated by Plaintiff, 14 would not implicate Hamilton's Fifth Amendment concerns—the 9 other officers who were on the scene, gave SBI statements,

13

and/or whose BWCs shot parts of the events, as well as various *Monell* related witnesses. Similarly, the vast majority, if not all, of the documentary discovery would not impinge on Hamilton's Fifth Amendment rights. Plaintiff should be permitted to pursue this discovery now. *See, e.g., Drolett v. Robinson*, 2021 U.S. Dist. LEXIS 35733, at *3 (W.D.N.C. Feb. 25, 2021) (finding that motion for complete stay unwarranted and instead issuing a partial stay of discovery as it related to information to be provided by defendant involved in parallel criminal proceeding); *Simmons v. Hall*, 2020 U.S. Dist. LEXIS 219591, at *3-6 (D.S.C. Nov. 23, 2020) (denying motion for complete stay and allowing discovery on issues that were unaffected by the defendant's parallel criminal case); *Aldridge v. City of St. Louis*, No. 4:18-CV-1677 CAS, 2020 U.S. Dist. LEXIS 6706, at *9-16 (E.D. Mo. Jan. 15, 2020) (same); *Petrov v. Alameda Cty.*, 2016 U.S. Dist. LEXIS 153693, at *9-20 (N.D. Cal. Nov. 4, 2016) (same).

III.     **Discovery Should Not Be Stayed As To Defendant City of Greensboro**

Even if the Court were to stay all discovery with respect to Defendant Hamilton, it should allow discovery to commence with regard to Plaintiff's *Monell* claims against the City. As noted above, the City has not joined Hamilton's motion to stay or made any arguments as to why a stay of the proceedings as to the City would be necessary or appropriate. Nor has Hamilton, in his motion, explained why a stay should extend to Plaintiff's claims against the City, and to the extent that Hamilton attempts to make this argument in his reply brief it should be deemed waived. "A party waives an argument by raising it for the first time in its reply brief." *Miles v. City of Henderson*, 2022 U.S. Dist. LEXIS 116060, at *14 (E.D.N.C. June 30, 2022) (quoting *Clendening v. United States*, 19 F.4th 421, 431 n. 7 (4th Cir. 2021)). For these reasons alone, Hamilton's motion for a complete stay of all proceedings should be denied at least as to Plaintiff's claims against the City.

14

Regardless, to the extent it would assist the Court in understanding specifically why discovery should commence against the City despite the City not arguing otherwise, Plaintiff offers the following justifications. *First*, the City has no Fifth Amendment privilege and thus is not faced with the dilemma and accompanying risks that confront an individual party to parallel civil and criminal litigation. *Second*, allowing such discovery to proceed will enable both Plaintiff and the City to evaluate Plaintiff's claim for settlement purposes. *Third*, there is a substantial body of documentary evidence to be discovered, and depositions to be taken, *inter alia,* on the issues of GPD training, supervision and discipline in the specific areas of deadly force, excessive force and use of canines as well as on the issue of the GPD's alleged pattern and practice of the discriminatory use of excessive and deadly force that is both time consuming and has no impact on Hamilton's Fifth Amendment right.

## CONCLUSION

For the foregoing reasons, Defendant Hamilton's motion for a stay of the proceedings should be denied.

Dated: October 4, 2022

Respectfully submitted,

/s/ Graham Holt
One of Plaintiff's Attorneys

Graham Holt
THE LAW OFFICE OF GRAHAM HOLT
Post Office Box 41023
Greensboro, North Carolina 27404
Phone: (336) 501-2001
gholtpllc@gmail.com

G. Flint Taylor, Ben H. Elson
PEOPLE'S LAW OFFICE
1180 N. Milwaukee Ave.
Chicago, Illinois 60642
Phone: (773) 235-0070
flinttaylor@peopleslawoffice.com
ben@peopleslawoffice.com

Attorneys for Plaintiff

**CERTIFICATE OF COMPLIANCE WITH WORD COUNT**

The undersigned hereby certifies that the foregoing document complies with Local Rule 7.3(d)'s limitation of no more than 6,250 words (excluding captions, signature lines, certificate of service and any cover page or index) as counted by word processing software.


Dated: October 4, 2022        <u>/s/ Graham Holt</u>

                                        Graham Holt

**CERTIFICATE OF SERVICE**

I hereby certify that on October 4, 2022, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send notification of such filing to all

counsel of record.

/s/ Graham Holt
Graham Holt
