IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| The ESTATE OF JOSEPH LOPEZ, | ) | |
| by Administrator Joe Lopez, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:22-CV-421 |
| | ) | |
| v. | ) | |
| | ) | |
| Greensboro Police Department Officer | ) | |
| MATTHEW HAMILTON, and the | ) | |
| CITY OF GREENSBORO, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
HAMILTON'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff Estate of Joseph Lopez by its undersigned attorneys, responds in opposition to

Defendant Hamilton's motion to for judgment on the pleadings (Dkt. 20), and in support states as

follows:

**INTRODUCTION**

On November 19, 2021, former Greensboro police officer, Defendant Matthew Hamilton,

killed Joseph Lopez by shooting him in the face with his handgun. Plaintiff's complaint, brought

by his father, Joe Lopez, as administrator of his estate, alleges that Hamilton's use of deadly

force was unreasonable in violation of the Fourth Amendment because Joseph, who was

unarmed and 15 feet away from Hamilton when Hamilton shot him, never verbally or physically

threatened Hamilton or anyone else in the moments before or at the moment of the shooting.

Hamilton's shooting of Joseph was so plainly excessive and unjustified that the Guilford County

District Attorney's Office saw fit to bring criminal charges against him, a rarity for police

officers who use deadly force.

Hamilton has moved for judgment on the pleadings, arguing, in essence, that when the facts and inferences are viewed in the light most favorable to him, his use of deadly force was reasonable and did not violate the Constitution. But his revisionist account of Plaintiff's allegations turns the legal standard on its head. Instead of accepting as true all of the factual allegations in the Complaint and drawing all reasonable inferences in favor of Plaintiff, as he is required to do, Hamilton creates his own version of the facts, based on inferences drawn in his favor and his mischaracterization of the body worn camera video of the incident, which he improperly asks the Court to consider.

Because Plaintiff's Complaint alleges more than sufficient facts to set forth plausible claims for relief against Hamilton and because Hamilton's conduct constitutes a violation of Plaintiff's clearly established constitutional rights, Hamilton's motion should be denied.

## STANDARD OF REVIEW

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While the complaint must "state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), "it nevertheless need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Wright v. North Carolina*, 787 F.3d 256, 263 (4th Cir. 2015). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

This Court has explained the legal standard for a Rule 12(c) motion for judgment on the pleadings as follows:

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Such a motion is analyzed "under the same standards as a motion to dismiss under Rule 12(b)(6)." *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013). Like a Rule 12(b)(6) motion, "[a] Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014). Unlike when deciding a Rule 12(b)(6) motion to dismiss, the Court, when deciding a motion for judgment on the pleadings, may consider the Answer. *Alexander v. City of Greensboro*, 801 F. Supp. 2d 429, 433 (M.D.N.C. 2011). The factual allegations contained in the Answer "are taken as true only where and to the extent they have not been denied or do not conflict with the complaint." *Jadoff v. Gleason*, 140 F.R.D. 330, 331 (M.D.N.C. 1991). Because the plaintiff is not required to reply to the Answer, "all allegations in the [A]nswer are deemed denied." *Id.* at 332. The defendant cannot therefore "rely on allegations of fact contained only in the [A]nswer, including affirmative defenses, which contradict Plaintiffs' complaint." *Id.*

A court should grant a motion for judgment on the pleadings "only … if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

*Hatch v. Demayo*, 2018 U.S. Dist. LEXIS 195973, at *4-5 (M.D.N.C. Nov. 15, 2018) (Biggs, J.).

The Fourth Circuit has emphasized that "[i]n testing the sufficiency of a civil rights complaint, 'we must be especially solicitous of the wrongs alleged,' and we 'must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged.'" *Stevenson v. Martin Cty. Bd. of Educ.*, 3 F. App'x 25, 29 (4th Cir. 2001) (quoting *Edwards v. City of Goldsboro*, 178 F.3d at 244; *see also McCollum v. Snead*, 2016 U.S. Dist. LEXIS 69884, at *5 (E.D.N.C. May 27, 2016).

## STATEMENT OF FACTS

Plaintiff's complaint alleges that on November 19, 2021, Greensboro police officers, including Defendant Hamilton, responded to a residence in Greensboro, where it had been allegedly reported that Joseph had previously been trying to enter. Compl., Dkt. 1 at ¶10. Hamilton and other GPD officers located Joseph inside a small room that was located at the rear

of a two car garage at the residence. *Id.* at ¶11. Hamilton, who was a police dog handler, approached and opened the door of the room with his police dog on a leash. *Id.* at ¶12. As he stood next to the open door, Hamilton said, "Greensboro police, if you're in there, make yourself known." *Id.* at ¶13. Joseph replied, "Yes, I'm here." *Id.* at ¶14. Hamilton then said, "Come out with your hands up or I'll send my dog in there and he'll bite you." *Id.* at ¶15. Joseph responded in a non-threatening manner that he would come out when it was "safe" to do so, and shortly thereafter, without justification, Hamilton released his police dog into the room where Joseph was sitting. *Id.* at ¶16-17. Seconds later, Hamilton walked through the door, pulled his handgun from his holster, stepped into the room, and, without saying anything, shot Joseph once square in the face with his service handgun, despite the fact that Joseph was approximately 15 feet away from Hamilton, made no verbal or physical threats to Hamilton or others, and presented no immediate danger to Hamilton or others. *Id.* at ¶17, 19, 23. Joseph died at the scene as a result of the hollow-point gunshot wound. *Id.* at ¶20. Immediately after fatally shooting Joseph, Hamilton exclaimed, "Oh shit . . . fuck." *Id.* at ¶21.

On June 6, 2022, the Guilford County District Attorney's Office announced that Hamilton had been indicted by a Guilford County Grand Jury on a charge of manslaughter in the death of Joseph Lopez. *See* Dkt. 25-1 (Indictment). On August 18, 2022, Hamilton filed his Answer to Plaintiff's Complaint, and, despite being under indictment, chose to fully answer all of the factual allegations in the Complaint, specifically denying, with extraneous surplusage, most of the allegations of wrongdoing alleged against him and asserting seven affirmative defenses, rather than to invoke the Fifth Amendment or seek a stay prior to filing his Answer. In his Answer, he also admitted that he released his police dog into the building and shot Joseph in the face.

# ARGUMENT

## I. The Court Should Decline To Consider The Body Worn Camera Videos At This Stage

Instead of accepting as true all of the facts alleged in Plaintiff's Complaint as he is required to do at this stage, Hamilton relies on selected body worn camera (BWC) video to create his own highly misleading version of the facts, which draws all of the inferences in his favor rather than in favor of Plaintiff. Thus, a threshold issue for the Court to decide is Hamilton's request that it consider the BWC video of the incident that he has submitted in support of his motion.

Hamilton asks the Court to consider the BWC to purportedly show that he did not use excessive force. According to Hamilton, this is proper because "Plaintiff relied on those videos in making his allegations [and] they have been incorporated by Plaintiff's reference" and the "authenticity of those videos is not in dispute." Def. Br. at 10. Although Plaintiff intends to rely on the BWC footage at summary judgment and trial because it powerfully supports his claims, it is improper for the Court to consider this evidence in the context of Hamilton's motion because it is not "integral" to the Complaint and the footage presents issues of factual interpretation which cannot be determined in favor of Hamilton at this stage given the requirement that the facts and inferences be construed in the light most favorable to Plaintiff.

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the documents attached or incorporated into the complaint." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015). "Consideration of extrinsic documents by a court during the pleading stage of litigation improperly converts the motion to dismiss into a motion for summary judgment." *Id.* "This conversion is not appropriate when the parties have not had an opportunity

to conduct reasonable discovery." *Id.* (citing Fed. R. Civ. P. 12(b), 12(d), and 56). "Courts therefore should focus their inquiry on the sufficiency of the facts relied upon by the plaintiffs in the complaint." *Id.* Consideration of a document attached to a motion to dismiss is only permitted when the document is "integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge [the document's] authenticity." *Id.* at 606-607 (internal citations and quotation marks omitted). "To be integral, a document must be one that by its very existence, *and not the mere information it contains*, gives rise to the legal rights asserted." *Brown v. Bank*, 2022 U.S. Dist. LEXIS 38626, at *12-14 (D. Md. Mar. 4, 2022) (emphasis in original) (internal quotations omitted).

Contrary to Hamilton's argument, the BWC is not integral to the Complaint. The factual allegations in the Complaint related to the claims against Hamilton do not cite or reference the BWC at all. *See* Compl. at ¶10-26, 28-29. The Complaint's sole reference to the BWC—which Hamilton relies on to argue that the BWC is integral—is the following allegation which relates to Plaintiff's claim against Defendant City of Greensboro:

> The Defendant City through its Police Department, despite having exclusive access to the Body Worn Camera (BWC) videos of Defendant Hamilton and the other GPD officers on the scene, contemporaneously issued a false and materially incomplete press release concerning the "murder/homicide" of Joseph Lopez.

*Id.* at ¶27. This allegation simply states that the City, through its Police Department, had exclusive access to the BWC videos. It does not reference what is contained on the BWC videos (nor does any other allegation in the Complaint), and such passing reference to the BWC videos certainly does not give rise to the legal rights asserted.

In *Smith v. City of Greensboro*, 2020 U.S. Dist. LEXIS 53132 (M.D.N.C. Mar. 25, 2020), this Court declined to consider BWC evidence submitted by the defendants in conjunction with their Rule 12(b)(6) motion where the complaint itself made no express mention of the video; the

6

factual allegations contained therein stood independent of the video, and could have conceivably been proven without it (for instance, via witness testimony); and there was no indication from plaintiffs that they actively relied upon the video in crafting the complaint. *Id.* at *8-9. The Court should reach the same decision here. *See, e.g., Slippi-Mensah v. Mills*, 2016 U.S. Dist. LEXIS 124719, at *8 (D.N.J. Sep. 14, 2016) ("Simply because a video that captured the events complained of in the complaint exists does not transform that video into a 'document' upon which the complaint is based."); *see also Estate of Valverde v. Dodge*, 2017 U.S. Dist. LEXIS 70653, at *6-9 (D. Colo. May 9, 2017) (declining defendant police officers' request that it consider video evidence of the underlying incident, rejecting defendants' argument that the video is integral to the complaint simply because the alleged conduct is depicted on the video, and explaining that "the limited exceptions to what the court can consider at this stage require that the plaintiff specifically reference or incorporate the evidence"); *Liebler v. City of Hoboken*, 2016 U.S. Dist. LEXIS 95641, at *7 (D.N.J. July 21, 2016) (declining to consider video of the underlying incident at the motion to dismiss stage, explaining that "[t]he context of the statements, the identities and tone of voice of the speakers, the decisions that may have preceded or surrounded a meeting, and so on, all present issues of factual interpretation … the video is not the sort of uncontroversial document that may itself settle the claims one way or the other.").

Hamilton's reliance on *Zsigray v. Cty. Comm'n*, 709 F.App'x 178 (4th Cir. 2018) is misplaced. In *Zsigray*, the Fourth Circuit held that the district court did not err in considering, at the Rule 12(b)(6) stage, a video that was not included with the plaintiff's complaint but "to which Zsigray referred several times to authenticate his version of events." *Id.* at 179. However, the circumstances of *Zsigray* are very different from those presented here. As the district court's opinion in *Zsigray* makes clear, on numerous occasions Zsigray explicitly referenced in the

complaint a specific video to support his version of events and rebut alternate explanations for the incident in question. *See Zsigray v. County Comm. of Lewis Cty.*, 2017 U.S. Dist. LEXIS 14699, at *7-8 (N.D. W. Va. Feb. 2, 2017). Indeed, the video "provide[d] almost all of the plaintiff's substantive basis for his claims." 2017 U.S. Dist. LEXIS 14699, at *9. Here, Plaintiff's single reference to BWC video, which has nothing to do with the factual allegations concerning Hamilton's conduct, does not qualify as "intergral." *See Brown*, 2022 U.S. Dist. LEXIS 38626, at *12-14 (declining to consider video evidence submitted by defendant in conjunction with its Rule 12(b)(6) motion and distinguishing *Zsigray*).

For all of these reasons, the Court should decline to consider the BWC at this stage.

## II. Hamilton Is Not Entitled To Qualified Immunity On Plaintiff's Fourth Amendment Claim

Hamilton's qualified immunity argument must be rejected because it is based on a mischaracterization of the facts and a misrepresentation of the constitutional right in question. "While the defense of qualified immunity may be presented in a motion to dismiss, the defense faces a 'formidable hurdle' 'when asserted at this early stage in the proceedings … and 'is usually not successful.'" *Blackburn v. Town of Kernersville*, 2014 U.S. Dist. LEXIS 170386, at *6 (M.D.N.C. Dec. 9, 2014) (quoting *Owens v. Baltimore City State's Attorneys' Office*, 767 F.3d 379, 396 (4th Cir. 2014)). To determine whether an officer is entitled to qualified immunity, courts engage in a two-step inquiry. "The first step is to determine whether the facts, taken in the light most favorable to the non-movant, establish that the officer violated a constitutional right." *Yates v. Terry*, 817 F.3d 877, 884 (4th Cir. 2016) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "At the second step, courts determine whether that right was clearly established." *Id.* Both prongs are satisfied here.

**A.     Hamilton violated Plaintiff's right to be free from unreasonable deadly force**

All excessive force cases, including deadly force cases, are analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The "reasonableness of a particular use of force must be judged from the perspective of a reasonable officer at the scene … the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. 386, 396-97. The officer's subjective belief or motivations are irrelevant. *See id.* at 397 ("Evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will . . . good intentions make an objectively unreasonable use of force constitutional.").

Determining whether the force used in a particular seizure was objectively reasonable "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396. This test involves consideration of the totality of the facts and circumstances in the particular case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. "The second *Graham* factor—whether [the suspect] posed an immediate threat to the safety of the officers or others—however, is undoubtedly the most important factor in determining the objective reasonableness of an officer's use of force…." *Crockett v. Blackwood*, 2020 U.S. Dist. LEXIS 39986, at *13 (M.D.N.C. Mar. 9, 2020) (Biggs, J.) (internal quotations and citation omitted).

When deadly force is at issue, the Supreme Court has long recognized that the intrusion on Fourth Amendment rights is "unmatched." *Garner*, 471 U.S. at 9. Such force is therefore

justified only where a reasonable officer would have "probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Id.* at 3. "And even a 'significant threat of death or serious physical injury' to an officer does not justify the use of deadly force unless the threat is 'immediate.'" *Williams v. Strickland*, 917 F.3d 763, 769 (4th Cir. 2019) (quoting *Garner*, 471 U.S. at 3, 11). As the Supreme Court stated in *Garner*, [an] "officer may not seize an unarmed, non-dangerous suspect by shooting him dead." 471 U.S. at 11. Moreover, if "feasible," the officer must give a warning before using deadly force. *Id.* at 12.

Viewing the factual allegations and inferences therefrom in the light most favorable to Plaintiff, Greensboro police officers, including Defendant Hamilton, in responding to a residence where it had been allegedly reported that Joseph had been previously trying to enter, located Joseph inside a small room that was located at the rear of a garage at the residence, and Hamilton, after a brief verbal exchange with Joseph, and after releasing his police dog into the room, stepped into the room and, without warning, shot Joseph once in the face from a distance of 15 feet, killing him. Taking as true the allegations in Plaintiff's complaint and drawing all reasonable inferences in its favor, Joseph was unarmed and had not made any verbal or physical threats to Hamilton or anyone else in the moments leading up to and at the moment of Hamilton's use of deadly force. Thus, the question for the Court is whether a reasonable officer facing these circumstances would believe that Joseph posed an immediate threat of death or serious physical injury to Hamilton or others.

As to the first *Graham* factor, while it can be inferred from the facts of the Complaint that there was a previous attempt to enter a residence and an immediate trespass into the garage of that residence, there are no allegations that Joseph was believed by Hamilton or anyone else to

be armed or to have committed any acts of violence. As to the third *Graham* factor, contrary to Hamilton's assertion, the Complaint does not compel the inference that Joseph was "actively resisting arrest." Rather, the Complaint alleges that Joseph responded to Hamilton's command that he make himself known by saying, "Yes, I'm here," and responded to Hamilton's command that he come out of the room by saying, in a non-threatening manner, that he would come out when it was "safe" to do so. Plaintiff is entitled to the inference that Joseph was never given the chance to come out of the room because Hamilton, in haste, released his police dog, and then walked through the door and immediately shot Joseph in the face without warning.

Regardless, the "most important" *Graham* factor— whether Joseph posed an immediate threat of death or serious physical injury to Hamilton or others—weighs so heavily in Plaintiff's favor, that it establishes a constitutional violation no matter how the other two factors are resolved. There is simply no avoiding the fact that the allegations in Plaintiff's Complaint, when taken as true with all reasonable inferences drawn in Plaintiff's favor, establish that no reasonable officer would believe that Joseph posed an immediate threat to Hamilton that would justify his use of deadly force given that: (1) Joseph was unarmed (and no inference can be drawn from the Complaint that Hamilton believed Joseph was armed); (2) Joseph told Hamilton he would come out of the room when it was safe; (3) Joseph made no verbal or physical threats to Hamilton or anyone else prior to being shot (and no inference can be drawn from the Complaint that he made any movements that Hamilton could have perceived as threatening); (4) Hamilton shot Joseph immediately upon entering the room with no warning; (5) Joseph was 15 feet away from Hamilton when he was shot in the face; and (6) Hamilton made an inculpatory post-shooting exclamation—"oh shit … fuck." The mere fact that Joseph was hiding in a room and did not immediately comply with Hamilton's order to come out would not cause a

11

reasonable police officer to believe that Joseph posed an immediate threat of death or serious bodily injury.[1]

On these facts, Hamilton's conduct is so patently violative of the constitutional right, that Plaintiff has been unable to locate a case with the same fact pattern, likely "because the illegality of the action [is] so clear that it [has] seldom before been litigated." *Clem v. Corbeau*, 284 F.3d 543, 553-54 (4th Cir. 2002). Moreover, the Fourth Circuit has repeatedly found an officer's use of deadly force to be unjustified in circumstances where the nature and extent of the threat was far greater than it was here. *See Clem*, 284 F.3d at 550-52; *Cooper v. Sheehan*, 735 F.3d 153, 159-60 (4th Cir. 2013); *Hensley v. Price*, 876 F.3d 573, 582-85 (4th Cir. 2017); *Betton v. Belue*, 942 F.3d 184, 191-93 (4th Cir. 2019); *Harris v. Pittman*, 927 F.3d 266, 273-75 (4th Cir. 2019); *Estate of Jones v. City of Martinsburg*, 961 F.3d 661, 670-73 (4th Cir. 2020); *Knibbs v. Momphard*, 30 F.4th 200, 214-223 (4th Cir. 2022); *see also Connor v. Thompson*, 647 F. App'x 231, 237-38 (4th Cir. 2016); *Streater v. Wilson*, 565 F. App'x 208, 211 (4th Cir. 2014). It is also significant, that all of the cases relied on by Hamilton, as well as all of the cases cited above, were decided on summary judgment, where the qualified immunity hurdle is higher than it is at the pleading stage.[2]

---

[1] Hamilton poses a litany of questions at the beginning of his brief—e.g., Who called the police? What was Joseph's relation to the residence? Was it known to the officers? What did Hamilton see when he entered the room? etc. (Def. Br. at 2)—and criticizes Plaintiff for not including the answers to these questions in his Complaint, but Plaintiff is under no requirement to include that level of detail; rather, all that is required by Fed. R. Civ. P. 8(a)(2) is "a short and plain statement of the claim showing that the pleader is entitled to relief."

[2] Hamilton cites *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021), which is obviously distinguishable because in that case the suspect threatened the officers with a hammer, refused orders to drop it, and then "raised the hammer higher back behind his head and took a stance as if he was about to throw the hammer or charge at the officers" prompting the officers to shoot him, whereas, here, Joseph was non-threatening and unarmed.

12

Hamilton's argument that "the BWC videos … further demonstrate that [his] use of force was not constitutionally unreasonable" fails for several reasons. Def. Br. at 16. *First*, as discussed above, the Court should decline his invitation to consider the BWC at the pleadings stage because it is not integral to the Complaint. *Second*, none of Hamilton's descriptions of what he says is contained on the BWC are supported by specific, as opposed to general, citations to the BWC, leaving the Court and Plaintiff to guess about what specific portions of each video he is referencing. *See* Def. Br. at 16-17. In line with this Court's Policies and Procedures related to Summary Judgment Motions, it should "not consider any description of a fact that is not supported by [specific] citation to the record." *Third*, even if the Court were to consider the BWC at this stage, it does not support Hamilton's assertions that: (1) he "had very poor visibility into the shed because the shed was dark inside and full of clutter, including large objects that could provide hiding/ambush positions;" or (2) "something moved abruptly in front of him." These "facts" that Hamilton asks the Court to assume as true are either not supported by the BWC at all (i.e, "something moved abruptly in front of him"), or, at most, based on inferences taken in Hamilton's favor, which would obviously be improper at this stage (i.e., "poor visibility"). *See, e.g., Brooks v. Johnson*, 924 F.3d 104, 111-12 (4th Cir. 2019) ("[at summary judgment], we review the facts, including the video footage of the episode, in the light most favorable to Brooks, drawing all reasonable inferences in his favor."); *Cantu v. City of Dohan*, 974 F.3d 1217, 1227-28 (11th Cir. 2020) (reversing grant of summary judgment where "a jury could reasonably interpret the video evidence differently" from the district court's interpretation). Viewed in the light most favorable to Plaintiff, the BWC establishes that Hamilton could see Joseph when Hamilton stepped into the room, an inference that is further supported by the fact that Hamilton shot Joseph square in the face; that nothing moved abruptly

in front of Hamilton at the moment he shot; and that Hamilton shot Joseph immediately upon entering the room without warning.

In fact, the videos, if the Court were to consider them, contain further evidence that supports Plaintiff's allegations. For example, on Hamilton's video at 7:06-7:08 you can hear him say "Stellen" twice as he releases his Dutch trained dog. Stellen is Dutch (and German) for "bite."[3] And on several of the other videos you can clearly hear Joseph saying in a distressful voice, "I'm coming!" just prior to Hamilton shooting him. *See* Exhibit C (Mercer) at 8:53, Exhibit D (Salava) at 8:53, and Exhibits F and G (Flannagan) at 9:04. You can also hear this on Brechtel's video at 8:53 which Defendant does not attach.[4] *Fourth*, even if the Court were to improperly consider the BWC in the light most favorable to Hamilton, and draw all inferences in his favor—including that Hamilton had poor visibility and observed something move abruptly in front of him—the facts would still establish a constitutional violation because even on these facts no reasonable officer would perceive that Joseph posed a threat of death or serious physical injury.

### B.  The constitutional right was clearly established

Plaintiff has also satisfied the second step of the qualified immunity analysis—whether Hamilton's use of unnecessary deadly force violated a constitutional right that was clearly established at the time the conduct occurred. *Saucier*, 533 U.S. at 201. While the Supreme Court has warned that courts must not define "clearly established law at a high level of generality," it has also instructed that there need not be a case directly on point. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). To be clearly

---

[3] *See* https://www.caninetrainingsystems.com/resources/commands.

[4] The times noted here coincide with the time indicated on the video player as opposed to the time stamp on the BWC.

Case 1:22-cv-00421-LCB-JLW   Document 33   Filed 10/10/22   Page 14 of 21

established, the "contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). As the Supreme Court explained in *Hope v. Pelzer*:

> Officials can still be on notice that their conduct violates established law even in novel factual circumstances …. The salient question that the Court of Appeals ought to have asked is whether the state of the law [at the time of the alleged wrong] gave respondents fair warning that their alleged treatment of [the petitioner] was unconstitutional.

536 U.S. 730, 741 (2002). In this analysis, the Fourth Circuit reviews "cases of controlling authority in this jurisdiction, as well as the consensus of cases of persuasive authority from other jurisdictions." *Sims v. Labowitz*, 885 F.3d 254, 262 (4th Cir. 2018) (quoting *Amaechi v. West*, 237 F.3d 356, 363 (4th Cir. 2001)). The Fourth Circuit has repeatedly held that "a right need not be 'recognized by a court in a specific context before such right may be held 'clearly established' for purposes of qualified immunity.'" *Yates*, 817 F.3d at 887 (quoting *Meyers v. Baltimore Cty.*, 713 F.3d 723, 734 (4th Cir. 2013)); *see also Sims*, 885 F.3d at 262 ("We observe that the exact conduct at issue need not previously have been deemed unlawful for the law governing an officer's actions to be clearly established."). As the Fourth Circuit explained:

> Instead, we must determine whether pre-existing law makes "apparent" the unlawfulness of the officer's conduct. Accordingly, a constitutional right is clearly established for qualified immunity purposes not only when it has been specifically adjudicated but also when it is manifestly included within more general applications of the core constitutional principle invoked.

*Sims*, 885 F.3d at 263 (internal quotations and citations omitted). Finally, "drawing inferences in favor of the nonmovant" is especially important when determining whether there is clearly established law. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). In other words, a court assessing the clearly established law cannot "resolve[] disputed issues in favor of the moving party." *Id.* And it must "properly credit[] Plaintiffs' evidence." *Id.* at 660.

15

Hamilton incorrectly asserts that "Plaintiff has the burden to clearly establish a constitutional violation," *see* Def. Br. at 12, 18, going so far as to criticize Plaintiff for not citing case law in its Complaint regarding the issue of qualified immunity, which, of course, Hamilton had not yet pled as an affirmative defense and Plaintiff had no obligation to anticipate. In fact, Fourth Circuit case law is clear that "the officer bears the burden on the second prong [of qualified immunity]." *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022); *see also Henry v. Purnell*, 501 F.3d 374, 377-78 & n.4 (4th Cir. 2007). Hamilton has not met this burden because his entire argument on the clearly established prong is just a rambling recitation (and misrepresentation) of general principles of qualified immunity case law, and does not even attempt to define the right in question as it relates to the facts plead here. *See* Def. Br. at 18-20. Thus, Hamilton has waived any argument that the right in question has not been clearly established. *See Volvo Grp. N. Am., Ltd. Liab. Co. v. Forja De Monterrey S.A. De C.V.*, 2017 U.S. Dist. LEXIS 155801, at *6 (M.D.N.C. June 1, 2017).

Regardless, Plaintiff's allegations, which must be taken as true, establish that Hamilton shot Joseph square in the face and killed him even though a reasonable police officer in Hamilton's position would have perceived Joseph to be unarmed and non-threatening. On this set of facts, the law in 2021 provided clear guidance to a police officer that he was not free to use deadly force. When Plaintiff's facts are accepted, this is an obvious case under *Garner*, which held that "[a] police officer may not seize an unarmed non-dangerous suspect by shooting him dead." 471 U.S. at 11-12. On the basis of *Garner* alone, (which the Supreme Court decided in 1985), the constitutional right at issue in this case was clearly established. *See, e.g., Clem*, 284 F.3d at 553-54 (holding that the constitutional right was clearly established by *Garner* alone in an obvious case); *Connor*, 647 F. App'x at 239 ("[W]e have held … that officers who commit a

16

violation 'manifestly included within' the 'core constitutional principle' announced in *Garner* are not entitled to qualified immunity."); *Streater*, 565 F. App'x at 212 (in obvious case, "right to be free from the use of lethal force to effectuate a seizure under the totality of the circumstances was manifestly included within more general applications of the core Fourth Amendment principles"); *Cole v. Carson*, 935 F.3d 444, 453 (5th Cir. 2019) (same); *cf. Hope*, 536 U.S. at 741. Additionally, long before 2021, Fourth Circuit precedent established clearly "the right to be free from deadly force when posing no threat." *Cooper*, 735 F.3d at 159; *see also Hensley*, 876 F.3d at 583; *Betton*, 942 F.3d at 194. Significantly, the shooting victims in *Cooper*, *Hensley* and *Betton* were all in possession of a firearm at the time of the shooting, yet the Court held that possession of a firearm alone does not justify deadly force unless an officer makes a reasonable assessment that he has been threatened with the weapon. Thus, in the present case, where Joseph was *unarmed* and made no threatening actions toward Hamilton whatsoever, the law was clearly established that Hamilton's use of force was unreasonable.

## III.    Hamilton Is Not Entitled To Public Official Immunity

Hamilton asserts that he is entitled to public official immunity as to Plaintiff's state law wrongful death claim for "precisely the same reasons" he claims he is entitled to qualified immunity as to Plaintiff's excessive force claim. Def. Br. at 23. "In North Carolina, public officials engaged in the performance of governmental duties involving the exercise of judgment and discretion enjoy immunity from personal liability." *Smith*, 2020 U.S. Dist. LEXIS 53132, at *25 (internal quotations omitted). "However, public official immunity may be pierced if it is proven that an officer's conduct was 'corrupt or malicious' or 'outside of and beyond the scope of his duties.'" *Id.* "An officer acts with malice when he does that which an officer of reasonable intelligence would know to be contrary to his duty." *Cooper*, 735 F.3d at 160 (internal quotations

17

omitted). "In other words, public official immunity 'is unavailable to officers who violate clearly established rights.'" *Smith*, 2020 U.S. Dist. LEXIS 53132, at *26 (quoting *Bailey v. Kennedy*, 349 F.3d 731, 742 (4th Cir. 2003)). Since Plaintiff has demonstrated that Hamilton violated Joseph's clearly established right to be free from excessive force, *see infra*, Hamilton's derivative argument that he is entitled to public official immunity fails. *See, e.g., Smith*, 2020 U.S. Dist. LEXIS 53132, at *25-26.

## IV.    Defendant City's Response to Hamilton's Motion

The City has not filed a motion to dismiss or a motion for judgment on the pleadings, but it has nevertheless asked the Court, in its response to Hamilton's motion, to dismiss it from this action in the event that the Court grants Hamilton's motion. *See* Dkt. 30. The Court should decline to even entertain this "request" since the City has failed to file a motion in violation of LR 7.3. Alternatively, its request should be denied, first, because Hamilton is not entitled to judgment on the pleadings as explained above, and second, because the City's argument for dismissal—that Plaintiff cannot prevail on his *Monell* claims without first establishing a constitutional violation—does not address the possibility that the City could be liable even if Hamilton is granted qualified immunity on clearly established law grounds, so long as the Court finds that a constitutional right was violated. In other words, the absence of clearly established law does not categorically preclude proof of deliberate indifference for municipal liability. *See Owen v. City of Independence*, 445 U.S. 622, 638 (1980) (holding that local governments are not entitled to the protections of qualified immunity); *International Ground Transp. v. Mayor & City Council of Ocean City, MD*, 475 F.3d 214, 219-20 (4th Cir. 2007) ("when a jury, which has been instructed on a qualified immunity defense as to the individual defendants, returns a general verdict in favor of the individual defendants but against the municipality, the verdict is consistent

18

and liability will lie against the municipality (assuming the verdict is proper in all other respects).”); *Gibson v. Cty. of Washoe, Nev.*, 290 F.3d 1175, 1185-87 & n.7 (9th Cir. 2002) (municipal liability may lie even when individual officers are exonerated on the basis of qualified immunity); *Quintana v. Santa Fe County Board of Commissioners*, 973 F.3d 1022 (10th Cir. 2020). Since there is far more nuance to this issue beyond the City's skeletal, derivative, and procedurally improper argument, it must be addressed, to the extent necessary, in the context of a formal motion, where the parties are given the opportunity for full briefing.

## CONCLUSION

For the foregoing reasons, Defendant Hamilton's motion for judgment on the pleadings should be denied.

Dated: October 10, 2022                 Respectfully submitted,

/s/ Graham Holt
One of Plaintiff's Attorneys

Graham Holt                                 G. Flint Taylor, Ben H. Elson
THE LAW OFFICE OF GRAHAM HOLT     PEOPLE'S LAW OFFICE
Post Office Box 41023                      1180 N. Milwaukee Ave.
Greensboro, North Carolina 27404      Chicago, Illinois 60642
Phone: (336) 501-2001                     Phone: (773) 235-0070
gholtpllc@gmail.com                      flinttaylor@peopleslawoffice.com
                                          ben@peopleslawoffice.com

Attorneys for Plaintiff

## CERTIFICATE OF COMPLIANCE WITH WORD COUNT

The undersigned hereby certifies that the foregoing document complies with Local Rule 7.3(d)'s limitation of no more than 6,250 words (excluding captions, signature lines, certificate of service and any cover page or index) as counted by word processing software.

Dated: October 10, 2022          /s/ Graham Holt
                                 Graham Holt

**CERTIFICATE OF SERVICE**

I hereby certify that on October 10, 2022, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send notification of such filing to all

counsel of record.

/s/ Graham Holt
Graham Holt

Case 1:22-cv-00421-LCB-JLW   Document 33   Filed 10/10/22   Page 21 of 21