IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| THE ESTATE OF JOSEPH LOPEZ, By Administrator Joe Lopez, <br><br> Plaintiff, <br><br> v. <br><br> Greensboro Police Department Officer MATTHEW HAMILTON and the CITY OF GREENSBORO, <br><br> Defendants. | Civil Action No. 1:22-CV-421 |

## REPLY TO RESPONSES OF PLAINTIFF AND CITY TO DEFENDANT HAMILTON'S CONTINGENT MOTION FOR STAY

### INTRODUCTION

Pursuant to his Contingent Motion for Stay (Dkt. 25), Defendant Hamilton requested that, if the Court does not grant him judgment on the pleadings on all claims, litigation of any surviving claims be stayed until the resolution of the related criminal charge (manslaughter) pending against him in the Superior Court of Guilford County, North Carolina.

Plaintiff Estate of Joseph Lopez makes three arguments. Plaintiff first argues that Hamilton's motion should be denied outright based on its novel argument that, by merely answering the complaint, Hamilton waived his Fifth Amendment right against self-incrimination. (*See* Plaintiff's Response, Section I (Dkt. 32, pp 7-9)). To the contrary, civil defendants have routinely answered complaints *and then* moved for a Fifth Amendment stay. And yet, no case has ever held, or even discussed the idea, that, as a

matter of law, the mere act of answering a complaint constitutes waiver. Such a rule would be contrary to the Court's obligation to "indulge every reasonable presumption against waiver" of the "fundamental" constitutional right against self-incrimination. *See, e.g., In re DG Acquisition Corp.*, 151 F.3d 75, 80 (2d Cir. 1998). It would also lead to needless delay and gamesmanship as the courts would have to resolve motions to stay before a defendant responded to even non-contested allegations. Accordingly, Plaintiff's argument against any stay should be rejected.

Plaintiff's second argument (Plaintiff's Response, Section II) is that if the Court does not find does not find waiver, then "the Court should issue a targeted limited stay of discovery only as it relates to testimony or interrogatory answers to be provided by Hamilton that would implicate his Fifth Amendment rights." (Dkt. 32, p 9). Along similar lines, Plaintiff's final argument (Plaintiff's Response, Section III), is that "[e]ven if the Court were to stay all discovery with respect to Defendant Hamilton, it should allow discovery to commence with regard to Plaintiff's *Monell* claims against the City." (Dkt 32, p 14).

Hamilton does not object to a limited stay that protects Hamilton's Fifth Amendment interests while avoiding the dilemma of having to invoke his Fifth Amendment right (in this case) or waive it (in the criminal case).

For its part, the City responds that as the matter is within this Court's sound discretion, "the City defers to the Court regarding the propriety of the stay." (Dkt. 31, pp 2-3).

2

**REPLY**

I.  **Hamilton's Non-Verified Answer, Which Was Signed Only By His Attorney After Reasonable Investigation and Contained Only Information Already Known to the Government, Did Not Waive Hamilton's Fifth Amendment Rights**

Plaintiff's claim that Hamilton waived his Fifth Amendment privilege seems to be a conclusion in search of a theory. First, plaintiff makes the very strange argument—unsupported by any caselaw—that Hamilton "engaged in gamesmanship and dilatory tactics" by ***answering*** the complaint in a timely manner, and that, by doing so, he has waived his Fifth Amendment privilege against self-incrimination.

That argument, on its face, makes no sense. A motion to stay is not a motion that tolls the time to file an answer under Fed. R. Civ. P. 12. Hamilton, therefore, was required to file his answer on or before August 18, 2022, which he did. Through that answer, he gave a substantive response to *every one* of plaintiff's allegations and gave plaintiff notice of his affirmative defenses. Far from unreasonably delaying the proceedings, it kept the case moving in its proper time. Further, it gave plaintiff the information it needed to move forward.

Plaintiff was in no way prejudiced by receiving a response to his allegations. Rather, plaintiff is merely attempting to use the criminal charge as a means of getting unfair advantages in this case. Had Hamilton sought a stay to avoid filing an answer—*or* claimed the Fifth Amendment in response to every allegation—plaintiff likely would have used *those acts* to claim that Hamilton "engaged in gamesmanship and dilatory tactics."

3

More importantly, the law simply does not support plaintiff's theory. Fifth Amendment motions to stay are frequent. *See Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 379 (4th Cir. 2013).[1] It is extremely telling, therefore, that plaintiff has not cited *a single case* where a Court ever suggested that the mere act of answering a complaint constitutes a waiver of a defendant's Fifth Amendment rights as a matter of law. After diligent research, we firmly believe there is no such case. In any event, there has been no waiver in this case.

The right against self-incrimination is a "fundamental constitutional right." *See, e.g., Emspak v. United States*, 349 U.S. 190, 198, 75 S. Ct. 687, 692 (1955). "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023 (1938). When faced with an alleged waiver of fundamental constitutional right (such as the right against self-incrimination), "the courts must 'indulge every reasonable presumption against waiver of fundamental constitutional rights.'" *Emspak*, 349 U.S. at 198, 75 S. Ct. at 692 (*quoting Johnson v. Zerbst*).

The Fifth Amendment privilege is not self-executing. *Roberts v. United States*, 445 U.S. 552, 559 (1980). It can be waived by failing to invoke it in a timely manner or by

---

[1] A Westlaw search for just "Kordel /p stay AND criminal" turned up over 500 relevant cases.

voluntary disclosure of incriminating evidence. *Rogers v. United States*, 340 U.S. 367, 373 (1951). The privilege not only extends "to answers that would in themselves support a conviction … but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant." *Hoffman v. United States*, 341 U.S. 479, 486 (1951)). A party can waive the right by voluntarily *testifying* or making a testimonial act to incriminating facts. *Rogers*, 340 U.S. at 373.[2]

Plaintiff's argument fails for two reasons. First, at its most basic, the answer does not constitute *Hamilton's testimony*. Hamilton neither signed nor verified the Answer. Rather, that answer was signed solely by Hamilton's counsel, Amiel Rossabi and Walter K. Burton, subject to the requirements of Fed. R. Civ. P. 11.

An answer signed by an attorney is not a testimonial statement by the answering party. Rather, it contains the contentions of the attorney based on the *attorney's* reasonable inquiry. Specifically, under Fed. R. Civ. P. 11(b), by signing a pleading, the *attorney* certifies, that, based upon his "inquiry reasonable under the circumstances," to the best of his knowledge, information, and belief: (i) the defenses and other legal contentions are warranted, (ii) the factual contentions have evidentiary support, and (iii) the denials of factual contentions are warranted on the evidence.

---

[2] Plaintiff incorrectly asserts that "[w]hen a party voluntarily *reveals* incriminating facts, that party cannot invoke the privilege to avoid disclosure of the details. *Rogers*, 340 U.S. at 373." (Dkt. 32, p 8) (emphasis added). Obviously, that assertion goes too far. The Fifth Amendment right against self-incrimination "applies only when the accused is compelled [1] to make a testimonial communication [2] that is incriminating." *Fisher v. United States*, 425 U.S. 391, 408 (1976).

5

Obviously, the signing attorney would consider information made known to him by the party himself. But, in order to fulfill his duty of reasonable inquiry, a signing attorney must *also* consider information that he could reasonably obtain from other sources. Accordingly, while Hamilton is bound by any admissions in the answer, the Court could not presume that each statement was based solely on statements made by Hamilton himself.

Here, as plaintiff itself sets forth, in this action, Hamilton is represented by Amiel Rossabi. (Dkt. 32, p 3). Rossabi also represents the Greensboro Police Officers' Association. (*Id.*) Following the tragic incident, the SBI conducted an investigation, as it does in every officer-involved fatal shooting. In that investigation, Rossabi represented not only Hamilton, but also *all of the other officers* who gave statements to the SBI. (*Id.*) That is, in preparing Hamilton's answer, Rossabi had firsthand knowledge of *every statement* of the events made by *every officer*. In addition, he had access to, and was able to review, all body worn camera videos. Rossabi represents that the assertions contained in the answer are supported by his personal knowledge of the contents of the BWC videos and statements of the other officers.

For example, Hamilton, himself, can be heard on the BWC videos stating that he believed he saw an object in Lopez's hands. Further, when interviewed, other officers related their knowledge that Lopez was a known felon, and of the prior incident a few days earlier where he had barricaded himself at the same residence with a shotgun. The other officers also related their impressions of the chaotic events, including Hamilton's statements at the scene that, when he entered the shed, he saw Lopez barricaded and that

6

he saw Lopez's hand pointed at him with a black object that he believed was a gun, which caused him to react to the threat of serious physical harm by firing a single round from his handgun, fatally striking Lopez in the face. Rossabi's review of the BWC videos further supported his impression that Hamilton was reasonably responding to actions by Lopez at the very moment he fired the fatal shot.

Plaintiff's argument also fails because plaintiff has not shown that the answer includes any *incriminating* facts. Nor does it, because the Answer only provides information and assertions already available to the government. The responses in the Answer are based on the above-described information generated in the SBI investigation. Of course, **all** of the information contained in that investigation was **already known to the government** prior to this action and prior to Officer Hamilton's indictment. Therefore, the Answer did not furnish the government any new "link in the chain of evidence needed to prosecute" Hamilton. Accordingly, the responses made by Rossabi did not divulge any incriminating facts.

In any event, the Court should forego any ruling on Hamilton's Fifth Amendment privilege at this time. As noted, the law of the land is that the Court has an obligation to "indulge every reasonable presumption against waiver" of the "fundamental" constitutional right against self-incrimination. *See, e.g., DG Acquisition*, 151 F.3d at 80 (*quoting Emspak*, 349 U.S. at 198). To date, Hamilton has never been called on to invoke or waive his right against self-incrimination. Further, plaintiff has not brought a motion to have the Court deem Hamilton's Answer as a waiver. As a result, Hamilton has had

7

neither a need, nor an opportunity, to put on evidence showing absence of a waiver. Finding a waiver of that right at this time would, therefore, be both premature and unfair.

Such a finding would also likely be counterproductive in that, if anything, it would create issues that *hinder* the fair and expeditious resolution of the matter. Hamilton does not believe that he has yet been called on to assert his Fifth Amendment rights, and he feels strongly that he has not waived such rights. This would create a significant procedural dilemma for Hamilton if the Court were to find that he had (at this time) waived those rights. That is, if, during discovery, he provided information he believed to be privileged, he would forever lose any privilege as to such information. If, on the other hand, he sought to protect the privilege by refusing to answer, he would be exposed to the Court's order of civil contempt. His only potential way out of the labyrinth would be to seek an interlocutory appeal on the issue. *See United States v. Dean*, 23 F. App'x 448, 450 (6th Cir. 2001) (Granting interlocutory review to district court's determination that defendant could not refuse to give documents to the IRS under his fifth amendment right. "Otherwise, a litigant could be forced to provide documents that do violate the privilege, without recourse to reverse potential incrimination. Under these circumstances, the district court's order is reviewable as a collateral order."). Justice would be better served, therefore, by declining to rule on this issue until it has been necessarily and properly raised.

## II. The Court Should Order a Limited Stay

Plaintiff proposes that if the Court does not find does not find waiver, then "the Court should issue a targeted limited stay of discovery only as it relates to testimony or

8

interrogatory answers to be provided by Hamilton that would implicate his Fifth Amendment rights." (Dkt. 32, p 9; *see also id.* at pp 9, 13-14).

Upon review of plaintiff's proposals, Hamilton agrees that a limited stay could be, and should be, fashioned to promote plaintiff's interest in timely resolution while also (i) protecting Hamilton's significant interest in his fundamental constitutional right to avoid self-incrimination, and (ii) allowing him to fully defend himself in the civil case while avoiding "the quandary of Defendant having to choose between waiving his Fifth Amendment rights or effectively forfeiting the civil case." *Green v. Cosby*, 177 F. Supp. 3d 673, 682 (D. Mass. 2016) (alterations and quotation omitted).

Hamilton disagrees, however, that any such stay could workably permit discovery directly from Hamilton. Most of the information that would be relevant to plaintiff's claims against Hamilton is discoverable from the City and/or third parties. That would include all of the statements and evidence generated in the SBI investigation, as well as depositions of all officers (other Hamilton) who were present at the scene. On the other hand, any discovery directly from Hamilton would inevitably lead to the parties disagreeing about whether or not it implicated Hamilton's Fifth Amendment interests. That would— also inevitably—require this Court to adjudicate such squabbles. This would create an unnecessary constitutional dilemma for Hamilton while simultaneously requiring the Court's involvement in recurring discovery disputes. The better approach is that taken by the U.S. District for Massachusetts in the Bill Cosby case. As that Court held, "[a] complete stay of this litigation, however, is not warranted. It simply is not necessary in

9

order to avoid the Fifth Amendment predicament. Rather, all that is necessary is that Defendant be exempted from providing discovery while his criminal case is pending." *Green*, 177 F. Supp. 3d at 681. "By minimizing the disruption to the discovery process, the court intends to keep the litigation progressing as much as possible." *Id.* However, such a limited stay would avoid putting Hamilton in "the precarious dilemma" of "having to choose whether to assert his Fifth Amendment privilege against self-incrimination (which could place him at a severe disadvantage in this case) or waive that privilege (and thus potentially incriminate himself in the criminal case)." *Id.* at 676.

Accordingly, in the spirit of plaintiff's proposals in Sections II and III of its Response, Hamilton proposes that Plaintiff and the City (but not Hamilton) be ordered to make all Rule 26(1)(1) disclosures and that *all parties* may engage in written and deposition discovery on all claims;[3] provided, however, that no party may seek any form of discovery directly from Hamilton until the first to occur of (i) the resolution of the criminal case or (ii) Hamilton's waiver of his Fifth Amendment rights in that case.

---

[3] In *Crosby*, the trial court rejected plaintiffs' objection that the court "should also stay discovery addressed to them because a one-sided stay of discovery would give Defendant the 'opportunity to strategically prepare his testimony and litigation strategy, before [he] has to provide any substantive discovery responses or deposition testimony at all.'" *Green*, 177 F. Supp. 3d at 682. As the trial court noted:

> While the court is somewhat sympathetic to this concern, its goal is to move this case forward as expeditiously as possible without unduly prejudicing Defendant's constitutional rights…. Plaintiffs do not face the same constitutional dilemma as Defendant. They are not facing criminal charges and thus there are no Fifth Amendment implications at play. Therefore, the prejudice Plaintiffs face in the absence of a stay is simply not comparable to Defendant's situation and does not outweigh the interest of advancing this litigation.

10

### III. The City Defers to the Court Regarding the Propriety of the Stay

The City responds that "[a]s the matter is within this Court's sound discretion, the City defers to the Court regarding the propriety of the stay." (Dkt. 31, pp 2-3). However, the City further takes the position that "any such stay should not be indefinite and should not extend beyond Friday, December 29, 2023." (*Id.*, p 3). Hamilton agrees that the Court should retain oversight of the matter in case events in the North Carolina criminal case rendered the stay inordinately long or unnecessary. However, Hamilton's legitimate interest in protecting his Fifth Amendment rights won't somehow just evaporate at the end of the next calendar year. Accordingly, the Order of stay should include a requirement that the parties periodically update the Court (e.g., every 120 days) on the status of the criminal case, with the Court retaining the right to modify the stay if warranted by circumstances in such case, e.g, if the criminal case were resolved or if Hamilton were to waive his Fifth Amendment rights in such case.

### IV. Conclusion

For the reasons stated, if the Court does not grant Defendant Hamilton's motion for judgment on the pleadings (Dkt. 20), then it should Order that Plaintiff and the City (but not Hamilton) shall make all Rule 26(1)(1) disclosures and that all parties may engage in written and deposition discovery on all claims; provided, however, that no party may seek any form of discovery directly from Hamilton until the first to occur of (i) the resolution of the criminal case or (ii) Hamilton's waiver of his Fifth Amendment rights in the criminal case, and that the parties shall periodically update the Court (e.g., every 120 days) on the

11

status of the criminal case, with the Court retaining the right to modify the stay if warranted by circumstances in such criminal case.

This, the 7th day of November, 2022.

/s/ Amiel J. Rossabi
North Carolina State Bar No. 16984
ROSSABI LAW PLLC
445 Dolley Madison Road, Suite 200
Greensboro, North Carolina 27410
Telephone: (336) 895-4350
Email: arossabi@r2kslaw.com

/s/ Walter K. Burton, Esq.
North Carolina State Bar No. 13969
WALTER K. BURTON, PLLC
Post Office Box 609
Oak Ridge, North Carolina 27310
Telephone: (336) 429-5525
Email: wkb@wburtonlaw.com

*Attorneys for Defendant Matthew Hamilton*

## **CERTIFICATE OF COMPLIANCE**

The attorney below certifies that the foregoing reply brief complies with the word-count limits of BCR 7.8.

**ROSSABI LAW PLLC**

/s/ Amiel J. Rossabi
Amiel J. Rossabi (N.C. Bar No. 16984)

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was served on all parties to this action by electronically filing the same with the Clerk of Court using the CM/ECF system, which caused notification of such filing to be emailed to the following parties of record:

        Graham Holt, Esq.
        Email:   gholtpllc@gmail.com

        G. Flint Taylor, Esq.
        Ben H. Elson, Esq.
        Email:   flinttaylor@peopleslawoffice.com
                    ben@peopleslawoffice.com

        Polly Sizemore, Esq.
        Email:   polly.sizemore@greensboro-nc.gov

        Sonny S. Haynes, Esq.
        Email:   Sonny.Haynes@wbd-us.com

This the 7th day of November, 2022.

        /s/ Amiel J. Rossabi
        North Carolina State Bar No. 16984
        *Attorney for Defendant Matthew Hamilton*
        ROSSABI LAW PLLC
        445 Dolley Madison Road, Suite 200
        Greensboro, North Carolina 27410
        Telephone: (336) 895-4350
        Email: arossabi@r2kslaw.com