# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ESTATE OF JOSEPH LOPEZ by Administrator Joe Lopez, | ) ) ) | |
| Plaintiff, | ) ) | 1:22CV421 |
| v. | ) ) | |
| MATTHEW HAMILTON and CITY OF GREENSBORO, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

The Estate of Joseph Lopez brings this action against Officer Matthew Hamilton of the Greensboro Police Department and the City of Greensboro alleging that Officer Hamilton shot Joseph Lopez in the face without justification, killing him. (ECF No. 1 ¶ 1.) Plaintiff's Complaint alleges two 42 U.S.C. § 1983 claims as well a state law wrongful death claim. (*Id.* ¶¶ 33–45.) Before the Court is Officer Hamilton's Motion for Judgment on the Pleadings made pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (ECF No. 20.) Also before the Court is Officer Hamilton's Contingent Motion for Stay, which asks that, in the event this Court denies the Motion for Judgment on the Pleadings, this Court stay the case pending the resolution of a related criminal case against Officer Hamilton. (ECF No. 25.) For the reasons stated herein, the Court will deny the Motion for Judgment on the Pleadings, and the Court will likewise deny the Motion for Stay.

# I. OFFICER HAMILTON'S MOTION FOR JUDGMENT ON THE PLEADINGS

## A. BACKGROUND

According to the Complaint, on the night of November 19, 2021, Officer Hamilton and other Greensboro police officers responded to a report that someone was trying to enter a residence. (ECF No. 1 ¶ 10.) When the officers arrived at the address, Lopez was "inside a small room . . . located at the rear of a two-car garage at the residence." (*Id.* ¶ 11.) Officer Hamilton, who was a police dog handler, approached the small room with his dog and opened the door. (*Id.* ¶ 12.) While standing near the open door, Officer Hamilton said, "Greensboro police, if you're in there, make yourself known." (*Id.* ¶ 13.) Lopez replied, "Yes, I'm here." (*Id.* ¶ 14.) Officer Hamilton then said, "Come on out with your hands up or I'll send my dog in there and he'll bite you." (*Id.* ¶ 15.) Lopez responded that he would come out when it was "safe" to do so. (*Id.* ¶ 16.) Officer Hamilton then released his police dog into the small room and the dog attacked Lopez, who yelled out in distress. (*Id.* ¶¶ 17–18.) Within seconds of releasing the dog into the room, Officer Hamilton also came through the door into the room and shot his gun, hitting Lopez in the face and killing him. (*Id.* ¶¶ 19–20.) Lopez was approximately fifteen feet away from Officer Hamilton and unarmed. (*Id.* ¶ 23.)

In this action, the Estate of Joseph Lopez has asserted a 42 U.S.C. § 1983 claim against Officer Hamilton for using excessive force during the encounter, and a 42 U.S.C. § 1983 claim against the City of Greensboro under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). (ECF No. 1 ¶¶ 33–41.) The *Monell* claim is not at issue in the motions

2

currently before the Court.[1] Plaintiff has also asserted a state law wrongful death claim against Officer Hamilton. (*Id.* ¶¶ 42–45.)

## B. Standard of Review

Under Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where the case turns on a legal question and the pleadings demonstrate that the moving party is entitled to judgment as a matter of law." *Fed. Ins. Co. v. S. Lithoplate, Inc.*, 7 F. Supp. 3d 579, 583 (E.D.N.C. 2014). Such a motion is generally analyzed "under the same standards as a motion to dismiss under Rule 12(b)(6)." *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013). "The court assumes the facts alleged by the nonmoving party are true" and draws all reasonable inferences in favor of the nonmoving party. *Lithoplate*, 7 F. Supp. 3d at 583. Like a Rule 12(b)(6) motion, a "Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014).

However, unlike when deciding a Rule 12(b)(6) motion to dismiss, the Court, when deciding a motion for judgment on the pleadings, may consider the answer. *Alexander v. City of Greensboro*, 801 F. Supp. 2d 429, 433 (M.D.N.C. 2011). Factual allegations contained in an

---

[1] The City of Greensboro filed a response to Officer Hamilton's Motion for Judgment on the Pleadings stating that Greensboro does not oppose the motion. (ECF No. 30 at 2.) Greensboro also argues in its brief that the *Monell* claim is derivative of the § 1983 claim against Officer Hamilton, and further requests that the "*Monell* claim be dismissed in the event the Court grants Officer Hamilton's Motion for Judgment on the Pleadings." (*Id.* at 4.) The Court will not consider this request because the Local Rules do not permit parties to make motions within their response briefs; motions must be set out in separate pleadings. L.R. 7.3(a).

Case 1:22-cv-00421-LCB-JLW   Document 59   Filed 08/02/23   Page 3 of 21

answer "are taken as true only where and to the extent they have not been denied or do not conflict with the complaint." *Jadoff v. Gleason*, 140 F.R.D. 330, 331 (M.D.N.C. 1991). "To survive a motion for judgment on the pleadings, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Conner v. Cleveland County*, 22 F.4th 412, 420 (4th Cir. 2022) (quoting *Pledger v. Lynch*, 5 F.4th 511, 520 (4th Cir. 2021)).

## C. DISCUSSION

Officer Hamilton presents two issues in his Motion for Judgment: qualified immunity from Plaintiff's § 1983 claim and public official immunity from Plaintiff's wrongful death claim. (ECF No. 21 at 4–6.) The Court addresses each in turn.

### 1. Officer Hamilton is Not Entitled to Qualified Immunity

Pursuant to the doctrine of qualified immunity, government officials are shielded from liability for civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Meyers v. Baltimore County*, 713 F.3d 723, 731 (4th Cir. 2013). As qualified immunity "is an immunity from suit rather than a mere defense to liability," the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). However, a defendant who raises qualified immunity in a 12(b)(6) motion "faces a formidable hurdle"— because dismissal at this early stage "is appropriate only if a plaintiff fails to state a claim that is plausible on its face," the defense "is usually not successful." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014) (quoting *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006)).

To determine whether a defendant is entitled to qualified immunity, the Court must follow the two-step procedure articulated in *Saucier v. Katz*.[2]  *See* 533 U.S. 194, 201 (2001). Generally, the Court first decides "whether a constitutional violation occurred."  *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011).  On a 12(b)(6) motion to dismiss, this means asking whether, "viewed in the light most favorable to the plaintiff," the allegations in the complaint "demonstrate a violation of the plaintiff's constitutional rights."  *See Harris v. Pittman*, 927 F.3d 266, 270 (4th Cir. 2019).  Second, the Court must examine "whether the right violated was clearly established"—that is, "sufficiently clear that every reasonable official would have understood" that his behavior violated the right at issue.  *See Henry*, 652 F.3d at 531–34; *Yates v. Terry*, 817 F.3d 877, 887 (4th Cir. 2016). This standard does "not require a case directly on point."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  Rather, "[w]hat matters is that it would be clear to a reasonable officer that his or her conduct was unlawful in the particular situation that he or she confronted."  *Livingston v. Kehagias*, 803 F. App'x 673, 679 (4th Cir. 2020) (unpublished) (quotation omitted).  To overcome a qualified immunity defense, a plaintiff must prevail at both *Saucier* steps.  *See* 533 U.S. at 201.

For an excessive force claim, at the first *Saucier* step courts apply a "standard of objective reasonableness" to evaluate whether an officer's use of force was excessive.  *Harris*, 927 F.3d at 272 (quoting *Clem v. Corbeau*, 284 F.3d 543, 550 (4th Cir. 2002)).  Though the standard defies "precise definition or mechanical application," the three factors outlined in *Graham v. Connor*—"[1] the severity of the crime at issue, [2] whether the suspect poses an

---

[2] The Court has discretion to address each prong in the order "that will best facilitate the fair and efficient disposition of each case."  *Raub v. Campbell*, 785 F.3d 876, 881 (4th Cir. 2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 242 (2009)).

immediate threat to the safety of the officers or others, and [3] whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight"—provide a framework for evaluating whether an officer's actions were objectively reasonable. *See* 490 U.S. 386, 396 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. Officers may use deadly force only "where the officer has probable cause to believe that a suspect poses a threat of serious physical harm, either to the officer or to others." *Cooper v. Sheehan*, 735 F.3d 153, 159 (4th Cir. 2013) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)).

For the first *Graham* factor, Officer Hamilton argues that he had probable cause to believe Lopez was committing a serious crime, specifically, "attempting to gain unauthorized entry into the dwelling of another," and that "there are no good scenarios" for why Lopez was doing this. (ECF No. 21 at 13.) Officer Hamilton suggests that Lopez may have been "trying to break and enter to steal items, or to potentially harm an occupant [of the residence]." (*Id.*) Plaintiff responds by conceding that "it can be inferred from . . . the Complaint that there was a previous attempt to enter a residence and an immediate trespass," but points out that "there are no allegations that [Lopez] was believed by [Officer] Hamilton or anyone else to be armed or to have committed any acts of violence." (ECF No. 33 at 10–11.)

Reading the Complaint in the light most favorable to Plaintiff, the Court notes that the Complaint does not mention any previous incidents at the residence, nor does it allege that

Lopez lacked authorization to be in the residence, or even that the residence belonged to someone else. (*See* ECF No. 1.) The Complaint only alleges that there had been a "report[ ] that decedent Joseph Lopez had been trying to enter [the residence]." (*Id.* ¶ 10.) Thus, absent Plaintiff's concession regarding the circumstances of the incident, the Court would not infer that Lopez had been committing any crime at all, not even trespass. Given Plaintiff's concession, however, the Court will treat the crime at issue here as trespass. However, the Court will not go any further; Officer Hamilton's suggestions about an intent to burglarize the residence or harm someone within are pure speculation. Courts across the country consistently treat trespass as a minor offense when addressing the *Graham* factors.[3] Accordingly, the Court finds that the first *Graham* factor weighs in Plaintiff's favor at this stage of the litigation.

For the second *Graham* factor, Officer Hamilton argues that since he "couldn't see Lopez," his "inability to determine whether this home intruder was armed would . . . cause a reasonable officer to fear that the suspect *could* pose an immediate threat to the safety of the officers or others." (ECF No. 21 at 13–14 (emphasis in original).) Plaintiff responds by highlighting various factual allegations that support that Lopez was not actually a threat. (*See* ECF No. 33 at 11.) Plaintiff also asserts that "[t]he mere fact that [Lopez] was hiding in a room and did not immediately comply with [Officer] Hamilton's order to come out would not cause a reasonable police officer to believe that [Lopez] posed an immediate threat of death

---

[3] *See, e.g., Blankenhorn v. City of Orange*, 485 F.3d 463, 478 (9th Cir. 2007) ("[T]he severity of the alleged crime, misdemeanor trespass, was minimal . . . ."); *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 174 (6th Cir. 2004) (describing trespass as "a minor offense"); *M.Y.M. by & through Portillo v. Chavis*, 582 F. Supp. 3d 323, 334 (E.D. Va. 2022) (describing trespass as an "unquestionably minor" crime); *see also* N.C. Gen. Stat. § 14-159.12 (classifying first degree trespass as a misdemeanor offense in most circumstances).

or serious bodily injury," particularly since Lopez acknowledged the officer and told him that he would come out when it was safe. (*Id.* at 11–12.)

In the Court's view, Defendant's argument is not persuasive. No reasonable officer should think that merely not being able to see someone justifies shooting them, and, moreover, the law of the Fourth Circuit requires much more than a fear of a possibility of a threat to permit use of deadly force. Even where an officer knows that a suspect has a gun, "the mere possession of a firearm by a suspect is not enough to permit the use of deadly force"—instead, "deadly force may be used only by a police officer when, based on a reasonable assessment, the officer or another person is *threatened* with the weapon." *Cooper*, 735 at 159 (emphasis in original). Here, according to the allegations, there was no indication that Lopez had any weapon, and Lopez did not make any threats. Additionally, Officer Hamilton shot Lopez immediately after ordering a police dog to attack him. Even if Officer Hamilton had initially felt threatened by a man hiding in the back of a garage and refusing to come out, there was no reason to think that Lopez still posed a threat to officers while being attacked by a police dog. *See Harris*, 927 F.3d at 272 ("[E]ven when an initial use of force is objectively reasonable, subsequent applications of force—even moments later—may not be . . . . '[F]orce justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated.'" (quoting *Waterman v. Batton*, 393 F.3d 471, 481 (4th Cir. 2005))). The Court therefore finds that the second *Graham* factor also weighs in Plaintiff's favor at this stage of the litigation.

Before turning to the third *Graham* factor, the Court notes that Officer Hamilton also argues that he should prevail because "[a]n officer can reasonably perceive a danger even

8

where he does not actually see a weapon and is not certain that a suspect's movement is the beginning of an attack," and because "Plaintiff . . . hasn't eliminated the reasonable possibility that an officer could reasonably have perceived that Lopez had a proximity to items [that one would expect to find in a garage] that could be used as a weapon." (ECF No. 21 at 15.) These arguments are not persuasive because they are not tethered to any allegations in the pleadings. Officer Hamilton does not identify any particular movement that may have been a threat. Viewing the allegations in the light most favorable to Plaintiff and drawing reasonable inferences in Plaintiff's favor, the Court infers that Lopez's movements were generally those of a man struggling with a police dog. Additionally, while Lopez could have been near items that he could have used as a weapon, no such items are mentioned in the pleadings, and there are no allegations that Lopez took any actions consistent with that possibility.

Finally, for the third *Graham* factor, Officer Hamilton argues that Lopez was resisting arrest, that "[t]he chaos of the situation was created by Lopez's resisting arrest," and that "[h]ad [he] submitted to the authorities as ordered, there would have been no need for Officer Hamilton to do a forcible entry into a small storage room on a dark night" and "there likely would have been no shooting." (ECF No. 21 at 16.) To support this argument, Officer Hamilton relies heavily on footage from officers' body-worn cameras. (*Id.* at 16–18.) Officer Hamilton contends that the Court may consider these videos because they were incorporated into the Complaint by reference and their authenticity is not in question. (*Id.* at 7.) Plaintiff responds that it is not proper for the Court to consider the videos at this stage of the proceedings, and that, looking only at the pleadings and ignoring the videos, the pleadings do not support that Lopez was resisting arrest. (ECF No. 33 at 5–8, 11.)

9

The Court finds that the Complaint does not incorporate the videos of the incident by reference. The only mention of videos capturing the incident is made as part of an allegation that Defendant City of Greensboro has exclusive access to them. (ECF No. 1 ¶ 27.) "Simply because a video that captured the events complained of in the complaint exists does not transform that video into a 'document' upon which the complaint is based." *Slippi-Mensah v. Mills*, No. 15-CV-7750, 2016 WL 4820617, at *3 (D.N.J. Sept. 14, 2016). The Court therefore will not consider the videos. *See Smith v. City of Greensboro*, No. 19-CV-386, 2020 WL 1452114, at *3–4 (M.D.N.C. Mar. 25, 2020).

Looking only to the pleadings, the Court finds that Lopez is not alleged to have been actively resisting arrest or attempting to flee from officers. He is alleged to have been hiding in the back of a garage and refusing to come out until it was "safe." There are no allegations that he said anything abusive to the officers, that he made any verbal threats, or that he took any actions suggestive of violence. Officers knew where he was and that he was not going anywhere. Accordingly, the third *Graham* factor supports Plaintiff at this stage of the litigation.

Having determined that all three *Graham* factors support that shooting Lopez was a constitutional violation under the circumstances alleged, the Court concludes that Plaintiff prevails at the first *Saucier* step at this stage of the litigation. The allegations here make out a constitutional violation. The Court therefore turns to the second *Saucier* step—whether "pre-existing law ma[de] the unlawfulness of the conduct in question"—again, as alleged by Plaintiff and drawing all reasonable inferences in Plaintiff's favor—"apparent." *Harris*, 927 F.3d at 281.

To determine whether a reasonable officer would have known that his conduct was unlawful in a given situation, the Court typically "need not look beyond the decisions of the

Supreme Court, [the Fourth Circuit], and the highest court of the state in which the case arose." *Wilson v. Kittoe*, 337 F.3d 392, 402–03 (4th Cir. 2003) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999)). However, when the "unlawfulness" of conduct would be "apparent" to any reasonable person, a right may still be recognized as "clearly established" even when there is no existing precedent directly on point. *Clem*, 284 F.3d at 553 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Courts must be nevertheless careful "not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). While "general statements of the law are not inherently incapable of giving fair and clear warning to officers," specificity is crucial in the Fourth Amendment context, as "it is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." *Id.* at 1152–53 (first quoting *White v. Pauly*, 580 U.S. 73, 79 (2017); and then quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).

Officer Hamilton argues that Plaintiff cannot prevail at the second *Saucier* step because he has not identified the constitutional right he claims was violated and consequently has not and cannot identify any case that would put an officer on notice that the specific conduct alleged here violated that right. (ECF Nos. 21 at 18–25; 35 at 4–5.) Plaintiff responds that, although Plaintiff has not located a case that is factually identical to what allegedly occurred here, (ECF No. 33 at 12), the circumstances of this case made it so "obvious" that shooting Lopez was a use of excessive force that a reasonable officer should have known that the rule of *Garner*—that "a police officer may not seize an unarmed non-dangerous suspect by shooting him dead"—forbade it, (ECF No. 33 at 16 (quoting *Garner*, 471 U.S. at 11–12)).

Officer Hamilton responds to Plaintiff's invocation of the *Garner* rule by asserting that the Supreme Court has held that this rule is only a general rule, that it "does not provide sufficient notice about specific uses of deadly force," and that reliance on it is a "mistake." (ECF No. 35 at 5.) However, none of the cases that Officer Hamilton cites for these assertions support them. Instead, they favor Plaintiff's arguments.

Officer Hamilton first cites *White v. Pauly*, 580 U.S. 73 (2017). In *White*, the Supreme Court did state that *Garner* "lay[s] out excessive-force principles at only a general level." *Id.* at 79. However, the Court then immediately added that "'general statements of the law are not inherently incapable of giving fair and clear warning' to officers," and that in "an obvious case" *Garner* does clearly establish the law. *Id.* (first quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997); and then quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)). The next case that Officer Hamilton cites, *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4 (2021), also recited the rule that *Garner* will suffice in an "obvious case," *id.* at 8 (quoting *Brosseau*, 543 U.S. at 199). Finally, while the Supreme Court did refer to one particular use of *Garner* in an earlier case as "mistaken" in *Mullenix v. Luna*, 577 U.S. at 13, it did not announce any blanket prohibition on relying on *Garner*; instead, the Court in *Mullenix* merely emphasized that the inquiry whether it was clearly established that certain conduct was unconstitutional must be "undertaken in light of the specific context of the case, not as a broad general proposition," *id.* (quoting *Brosseau*, 543 U.S. at 198).

Here, Plaintiff has argued that it was obvious at the time of the incident and under the circumstances that *Garner* forbade shooting Lopez. (ECF No. 33 at 12–16.) The Fourth Circuit has stated that at the second *Saucier* step the defendant carries the burden of proof.

12

*Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022) (citing *Henry*, 501 F.3d at 377–78 & n.4). Officer Hamilton has not offered any arguments whatsoever that this was not an obvious case. (ECF Nos. 21 at 18–20; 35 at 4–5.) Because Officer Hamilton bears the burden at this step of the analysis, the failure to contest obviousness is, standing alone, sufficient reason to find that Plaintiff prevails here.

Moreover, the Court agrees with Plaintiff that it should be obvious to any reasonable officer that shooting an unarmed and unthreatening person who is not trying to flee *immediately after releasing a police dog on him* is a use of excessive force under the general prohibition against shooting unarmed, non-dangerous suspects.

Additionally, even if this were not obviously a constitutional violation, the Court's research has located a case from the Fourth Circuit where officers beat a man who was already being attacked by a police dog. *Kopf v. Wing*, 942 F.2d 265, 266–67 (4th Cir. 1991). In that case, officers were chasing suspects after an armed robbery. *Id.* at 266. Eventually, the officers cornered the suspects in a narrow space behind a shed in the back yard of a house in a residential neighborhood. *Id.* The officers released a police dog to flush the suspects out and then closed in as well. *Id.* While one of the suspects was "kicking the dog and flailing his arms," he struck an officer. *Id.*; *see also id.* at 268 (noting officer testimony that supported that the "flailing about may have been simply [the suspect] fighting with the dog" rather than an attempt to fight the officers). The officers struck back with blackjacks. *Id.* at 266–67. By the end of the altercation, the suspect was "frightfully mauled" and had to spend several weeks in the hospital. *Id.* at 267. During the subsequent § 1983 litigation, the officers moved for summary judgment, the district court granted that motion, and the Fourth Circuit reversed the

13

judgment and remanded for further proceedings. *Id.* at 267, 270. The Fourth Circuit's observations in that case included that a district court should not fault a suspect "for fighting with [a] dog rather than surrendering" because "a jury could find it objectively unreasonable to require someone to put his hands up and calmly surrender while a police dog bites [him]." *Id.* at 268. The Fourth Circuit further stated that "even if [a jury] found that force was necessary to arrest [the suspect], a reasonable jury could nonetheless find the *degree* of force excessive." *Id.* at 269.

Given the similarities between the circumstances of *Kopf* and this case—a cornered suspect in an enclosed space, use of a police dog on the cornered person, escalation of force after releasing the dog, and no apparent threatening or furtive movements by the suspect (except for struggling with the dog)—the Court finds that Officer Hamilton should have been on notice that he could not shoot Lopez under these circumstances. Indeed, in some ways the case here presents facts more extreme than in *Kopf*. The incident in *Kopf* was precipitated by an armed robbery, not a mere report of a possible trespass. Moreover, the suspects in *Kopf* led police on a chase prior to the fight. Finally, the officers in *Kopf* used blackjacks rather than a gun, and the suspects in *Kopf* lived.

For the foregoing reasons, the Court finds that Plaintiff prevails at both steps of the *Saucier* analysis at this stage of the litigation. Plaintiff has plausibly alleged that Officer Hamilton violated Lopez's clearly established constitutional right to be free from excessive force. Officer Hamilton therefore is not entitled to qualified immunity at this time.

14

2.      <u>Officer Hamilton is Not Entitled to Public Official Immunity</u>

In North Carolina, public officials "engaged in the performance of governmental duties involving the exercise of judgment and discretion" enjoy immunity from personal liability.[4] *Meyer v. Walls*, 489 S.E.2d 880, 888 (N.C. 1997) (quoting *Smith v. Hefner*, 68 S.E.2d 783, 787 (N.C. 1952)).  However, public official immunity may be pierced if it is proven that an officer's conduct was "corrupt or malicious" or "outside of and beyond the scope of his duties." *Id.* (quoting *Hefner*, 68 S.E.2d at 787).  "An officer acts with malice when he 'does that which [an officer] of reasonable intelligence would know to be contrary to his duty.'" *Cooper*, 735 F.3d at 160 (quoting *Bailey v. Kennedy*, 349 F.3d 731, 742 (4th Cir. 2003)).  In other words, public official immunity "is unavailable to officers who violate clearly established rights." *Bailey*, 349 F.3d at 742.  As this Court has found that the Complaint plausibly alleges that Officer Hamilton violated Lopez's clearly established rights, the Court therefore finds that public official immunity is not available against the state law wrongful death claim at this stage of the litigation.

## II.     OFFICER HAMILTON'S MOTION TO STAY

After the shooting on the night of November 19, 2021, the North Carolina State Bureau of Investigation began an investigation of the incident.  (ECF Nos. 32 at 3; 36 at 6.) The government eventually decided to pursue charges against Officer Hamilton, and a grand jury sitting in Guilford County indicted Officer Hamilton for manslaughter on June 6, 2022. (ECF No. 25-1.)  Plaintiff filed this civil case against Officer Hamilton that same day.  (ECF No. 1.)  Officer Hamilton's Contingent Motion for Stay seeks a stay of this case to preserve

---

[4] "It is well settled that police officers are public officials." *Chastain v. Arndt*, 800 S.E.2d 68, 75 (N.C. Ct. App. 2017).

15

his Fifth Amendment right against self-incrimination in the criminal case, which the Court understands is still pending. (ECF No. 25.)

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 379 (4th Cir. 2013) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "Because of the frequency with which civil and regulatory laws overlap with criminal laws, American jurisprudence contemplates the possibility of simultaneous or virtually simultaneous parallel proceedings and the Constitution does not mandate the stay of civil proceedings in the face of criminal proceedings." *Id.* (quoting *Ashworth v. Albers Med., Inc.*, 229 F.R.D. 527, 530 (S.D. W.Va. 2005)). "The propriety of a stay is determined on a case-by-case analysis." *Ashworth*, 229 F.R.D. at 531. "The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983). In addition to examining the relationship between civil and criminal matters and whether they involve the same issues, courts generally consider the following factors:

> (1) the interest of the plaintiffs in proceeding expeditiously with [the] litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay, (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

*Ashworth*, 229 F.R.D. at 530 (quoting *Keating v. Off. of Thrift Supervision*, 45 F.3d 322, 325 (9th Cir. 1995)).

16

Here, this case and the criminal case against Officer Hamilton are related and involve the same issues—specifically, the reason or reasons why Officer Hamilton shot Lopez.

Officer Hamilton's principal reason for seeking a stay is to protect his Fifth Amendment right against self-incrimination. (ECF No. 26 at 1.) The issue for Officer Hamilton is that he may wish to testify in his defense in this civil case (where his silence may be used against him), but he would not want to thereby waive any Fifth Amendment protections in the criminal proceeding (where his silence cannot be used against him) or to have any of his civil testimony used there. (*See id.*) Officer Hamilton further argues that a stay would "at most" delay this matter, and that such a delay would not constitute prejudice to Plaintiff. (*Id.*) Officer Hamilton also proposes that a stay could even benefit Plaintiff and the Court because some effort may be duplicated if the two cases proceed simultaneously; by letting the criminal matter go first, this civil matter can take advantage of any evidence that comes to light in the criminal matter. (*Id.* at 1–2, 10–11.) Finally, Officer Hamilton argues that a stay is in the public interest because it will respect the Fifth Amendment, it will ensure that civil disputes are resolved on a full factual record, and it will promote public confidence that law enforcement officers are able to do their jobs without fear of prosecution or litigation.[5] (*Id.* at 11–12.)

---

[5] Officer Hamilton also argues that because the City of Greensboro is a North Carolina municipality and North Carolina municipalities are instrumentalities of the State of North Carolina (*i.e.*, the entity prosecuting Officer Hamilton for manslaughter in the criminal case), there is a risk that the State will manipulate the City of Greensboro into obtaining materials through the civil discovery process for use in the criminal prosecution. (ECF No. at 7.) This argument is frivolous. If Officer Hamilton is worried that his co-defendant might improperly disclose certain discovery materials to government prosecutors, he may seek a protective order for those materials.

Plaintiff responds that Officer Hamilton has already waived his Fifth Amendment right in this case by submitting an Answer to the Complaint rather than immediately seeking a stay. (ECF No. 32 at 7–9.) Plaintiff also characterizes the timing and sequence of Officer Hamilton's motions in this case (including several motions related to discovery disputes) as intentionally dilatory and indicative of an attempt to use his Fifth Amendment right as a strategic tool. (*Id.*) Further, Plaintiff represents that, given the case backlog statistics in state court, it could be *years* before the criminal case against Officer Hamilton has a trial date; thus, Plaintiff argues, this is not a case of a reasonably short non-prejudicial delay. (*Id.* at 9–11.) Regarding the public interest, Plaintiff urges that a stay would impair the public's interest in the prompt disposition of civil litigation—Plaintiff points out that while law enforcement officers may be interested in seeing Officer Hamilton exonerated and civil litigation against him stopped, the general public has an interest in seeing justice served when officers shoot and kill suspects. (*Id.* at 12–13.) Finally, Plaintiff proposes that, if this Court rejects Plaintiff's arguments why no stay should be imposed, this Court could impose a stay that only prevents discovery seeking testimony or interrogatory answers from Officer Hamilton. (*Id.* at 9.) Plaintiff argues that this would allow this litigation to reasonably progress while protecting Officer Hamilton's Fifth Amendment rights; if any Fifth Amendment issues arise during the pendency of the stay the Court can address them. (*Id.* at 9, 11.) Officer Hamilton states that he would not object to such a limited stay. (ECF No. 36 at 2.)

The City of Greensboro has not taken a position on whether a stay is proper in this case. (ECF No. 31 at 2–3.) However, the City of Greensboro asks that, if a stay is imposed,

"such stay should not be indefinite and should not extend beyond Friday, December 29, 2023." (*Id.* at 3.)

The Court will not impose a stay in this case.

The Court recognizes that "the strongest case for deferring civil proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter" because "[t]he noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case." *Ashworth*, 229 F.R.D. at 531 (quoting *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375–76 (D.C. Cir. 1980)). However, the mere circumstance of having parallel civil and criminal proceedings against the same party does not automatically justify a stay. *Dresser*, 628 F.2d at 1375 ("The Constitution . . . does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings."). Nothing here makes this case unique compared to other situations where there are parallel civil and criminal proceedings against the same party. *See Paine, Webber, Jackson & Curtis Inc. v. Malon S. Andrus, Inc.*, 486 F. Supp. 1118, 1119 (S.D.N.Y. 1980) ("[A] policy of freely granting stays solely because a litigant is defending simultaneous multiple suits would threaten to become a constant source of delay and an interference with judicial administration.").

Moreover, the Court is very concerned that any stay imposed in this case that depends on the criminal case reaching some resolution will cause a substantial delay. It has already been over a year since Officer Hamilton was indicted (and over a year since this civil case was

19

filed). Before issuing this Memorandum Opinion and Order, the Court asked the attorneys for the parties what the status of the criminal case was. Officer Hamilton's attorney responded that there was a Motion to Dismiss the Indictment pending in the criminal case and that it was "very likely" to be heard sometime during the next six-month session of Superior Court. It is possible that Officer Hamilton may prevail in that motion and this case could go forward soon. However, it is also possible that Officer Hamilton may not prevail, and this case might linger indefinitely. Even a limited stay that prevented only certain kinds of discovery would not avoid this outcome, as discovery could not conclude until the stay lifted, which would not occur until the criminal case concluded. *See Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 579 (S.D.N.Y. 2001) (explaining that a limited stay of some but not all discovery while a criminal matter is pending can "[i]n practice . . . effectively stop[ ] the [civil] case in its tracks"). "Civil plaintiffs who claim to be the victims of criminal activity do not deserve slower justice than other plaintiffs." *Reeves v. Town of Cottageville*, No. 12-CV-2765, 2013 WL 1566635, at *2 (D.S.C. Apr. 12, 2013). Without some sign that the criminal proceeding is likely to conclude within a reasonable amount of time, this Court will not enter a stay that depends on developments in that case.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that Officer Hamilton's Motion for Judgment on the Pleadings, (ECF No. 20), is **DENIED**.

**IT IS FURTHER ORDERED** that Officer Hamilton's Contingent Motion for Stay, (ECF No. 25), is **DENIED**.

This, the 2nd day of August 2023.

/s/Loretta C. Biggs
United States District Judge